*103 NY 467*
*113 « 352*
*126 « 238*
*« 307*
*129 « 215*
*130 « 72(4)*
*171 « 122*
*173 « 450*
*177 « 99*
*194 « 306*
*209 « 593(4)*

Statement of case.

ASA L. SHIPMAN, as surviving Executor, etc., Respondent, *v.* ISABELLA G. ROLLINS, et al., Appellants, et al.

F. by his will devised certain real estate to his widow for life, and directed the executors to sell sufficient of his other real estate to provide a fund to be invested so as to produce a specified annuity to be paid her during life, etc., and after the widow's death he authorized the executors to sell the residue of the real estate, add the proceeds to the amount invested, and after paying therefrom certain items specified he directed that the balance be "then" divided into eight parts, four of which he gave to certain religious associations not then incorporated, the language of the will showing that the testator was aware of this fact and contemplated a future incorporation; after his death, but before the death of the widow the said associations were duly incorporated. In an action brought to obtain a due construction of the will, *held*, that the legacies so given did not vest until the death of the widow and the creation of the fund provided for; and, as the beneficiaries named were then capable of taking, that the bequests were valid.

Also *held*, that it was sufficient if the legatees were so described that they could be ascertained and known when the right to receive the legacies vested.

The will directed the executors to invest $9,000 on bond and mortgage, $200 of the interest received thereon to be paid annually to E., and $200 to L. during life; the surplus of interest the testator gave to a charitable association named, unless his sister should become a widow; if this event happened the surplus thereafter he gave to said sister during life. After the death of said three legatees he directed the principal to be paid to said association. *Held*, that the bequest of the principal was void, as there was an illegal suspension of the power of alienation.

In a prior action brought by the executors for the construction of the will, to which said association was not a party, the bequest to it was adjudged valid. *Held*, that the former judgment was not conclusive in this action, and the parties thereto were not estopped thereby ; that said association, by accepting the result of the former adjudication, did not change its relation to the other parties in interest; but that payments of portions of the income to the association having been made by the executors in accordance with said judgment, they should not be called upon to account for the same.

(Argued February 2, 1885 ; decided March 3, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an

order made May 28, 1884, which reversed in part and affirmed in part a judgment entered upon a decision of the court at Special Term. (Reported below 33 Hun, 89.)

This action was brought by plaintiff as surviving executor of the will of Daniel Fanshaw, deceased, to obtain a judicial construction of his will and directions as to the disposition of so much of the estate as remained undistributed.

The provisions of the will in question are as follows:

"*Second* — I give, devise and bequeath unto my wife, Harriet Ambler, during her natural life, the use, net income and profits of my present residence on the Third avenue, and the nineteen lots and gores connected therewith; bounded as follows: west by the Third avenue, north by Ninety-first street, south in part by Ninetieth street, south-easterly by land of the Rhinelander estate. I also give to my said wife all the furniture, beds and bedding, plate, jewelry, kitchen furniture, and all things that may pertain to housekeeping, and all property of every sort that may be on the premises, that may belong to me at the time of my decease [bonds and mortgages excepted]. I also give to my said wife an annuity of fifteen hundred dollars per annum, payable to her semi-annually by my executors, out of the fund hereinafter provided for that purpose. All of which devises and bequests, if accepted by her, to be in lieu and bar of dower. I hereby authorize and empower my aforesaid executors to sell so much of my real estate as is not specifically devised as will be sufficient to produce an annual income of fifteen hundred dollars. The principal sum to be loaned out on bond and mortgage on real estate in the city and county of New York, and the annuity hereinbefore given to my wife to be paid out of the same, semi-annually to her during her natural life. And if necessary alterations, repairs, taxes, assessments, or other exigencies should arise connected with the real estate hereinbefore devised to my wife, and such exigency should, in the opinions of my executors, make it necessary to part with any portion of the real or personal estate to my wife here devised, to meet

said demands, I authorize and empower my said executors to dispose of, from time to time, so much thereof, and such portions thereof as may seem to them and my wife necessary to meet said demands. After the death of my wife, what may be left of the real and personal estate hereinbefore devised to her, or the proceeds thereof, I authorize my executors to sell, and add the proceeds of said sales to the amount which is to produce her annuity; and from this fund (if she leaves no cash or property of her own) I direct them to pay her funeral expenses, and such debts as she may have contracted, as well as all mortgages which may then be standing against me. The balance of said fund is then to be divided into eight equal shares, and disposed of, as follows: One portion is to be divided among my grandchildren whose first names are Rebecca, Harriet or Daniel, and the rest of my grandchildren. Those of them named are to have a double portion to the rest, that they may purchase some remembrance of myself or my wives, if they think proper so to do. One other portion I give to the American and Foreign Christian Union, formed in the city of New York, in the year 1849. The interest to be expended yearly in donations of their publications among the Sabbath-school libraries. One other portion I give to the New York Tract Society, founded in the city of New York, on the 19th day of February, 1827. The interest thereof to be expended each and every year in the purchase of the American Tract Society's publications; said works to be distributed among the most depraved part of the population of the city of New York. One other portion I give unto the American Seamen's Friend Society, incorporated by the legislature of New York in the year 1833. The interest thereof to be yearly expended for the publications of the American Tract Society; said books to be distributed in the boarding-house of the society, and the vessels in the harbor. Two other portions I give to the first Reformed Low Dutch Church that may be built after the year 1856, between the Fifth avenue and the East river, and Seventy-ninth and Ninety-fifth street.

"I hereby authorize and empower my executors to sell all

my real and personal estate not herein specifically disposed of, at such time or times as they may think best, and to execute conveyances for the same. Out of the proceeds of said sales it is my will that my said executors shall place out on bond and mortgage on real estate in the city and county of New York, the sum of nine thousand dollars, and out of the balance of said proceeds to pay all my just debts, bonds and mortgages included. The interest of the aforesaid nine thousand dollars I dispose as follows: To my sister-in-law, Eliza Ramage, I give of said interest the semi-annual sum of one hundred dollars, during her natural life. I give unto my daughter-in law, Letitia Fanshaw, the semi-annual sum of one hundred dollars, during her natural life. I give unto the Women's Hospital Association, formed in the city of New York, in the year 1855, the surplus annual interest arising from the said nine thousand dollars, as fast as it may be received unless my sister should become a widow, after which time I give the said surplus interest to my said sister during her natural life. And it is my further will that on the death of either of my said sister, daughter-in-law or sister-in-law, the annuity herein before granted to the one so dying shall be paid over to the treasurer of said hospital, and when all three have departed this life, the said principal sum of nine thousand dollars and the interest that may be due thereon is to be paid over to the treasurer of the said hospital association as their own property, unless it is needed to pay off bonds and mortgages against me. In which case so much of it as is required for that purpose may be so appropriated, and the balance, if any, handed over to said treasurer."

The facts, so far as material, are stated in the opinion.

*John L. Hill* for the Prospect Hill Reformed Dutch Church, appellant. The legacies provided for in the residuary clause did not vest until the death of the testator's widow and the creation of the fund provided for. (*Hoghton* v. *Whitegreave*, 1 Jac. & Walk. Ch. 145 ; *Vincent* v. *Newhouse*, 83 N. Y. 511 ; *Powers* v. *Cassidy*, 79 id. 602 ; *Savage* v. *Burnham*, 17 id.

561; *Manice* v. *Manice*, 43 id. 303 ; *Loder* v. *Hatfield*, 71 id. 92.) It is not material that this appellant was not incorporated prior to the death of the testator. It is sufficient that it was duly incorporated, and answered to all the conditions of the bequest, at the time of the death of ·the testator's wife, when the right to receive it accrued. (*Holmes* v. *Read*, 52 N. Y. 332 ; *Lefevre* v. *Lefevre*, 59 id. 434.) It is to be presumed that the testator intended to make a legal bequest rather than an illegal one. (*Dubois* v. *Ray*, 35 N. Y. 162.) And to effectuate the evident intention of the testator, words and limitations may be transposed, supplied or rejected. (*Bond* v. *Berg*, 10 Paige's Ch. 141.) A will should be construed so as to avoid, if possible, all repugnancy and to give effect to all its language. (*Roseboom* v. *Roseboom*, 81 N. Y. 356 ; *Post* v. *Hover*, 33 id. 593 ; *Hoppock* v. *Tucker*, 59 id. 202 ; *Wager* v. *Wager*, 96 id. 164.) Where a gift is capable of being executed by a judicial decree, there is no reason why a court should not execute it. (*Powers* v. *Cassidy*, 79 N. Y. 602; *Burrill* v. *Boardman*, 43 id. 254.) A devisee not being incorporated at the time the gift to it was to take effect, in possession, was not capable of being a grantee or devisee by that name. (*White* v. *Howard*, 52 Barb. 294.) When it appears from the will that the donee is to come into being in future, or to become qualified to take upon the happening of some future event, a present bequest will not be presumed, nor unless there is not the least circumstance from which to collect the testator's intention of any thing else than an immediate devise, to take effect *in præsenti*. (*Burrill* v. *Boardman*, 43 N. Y. 258.) The real estate which was to be sold in order to create the widow's annuity fund must be treated as personal estate, because of the plain equitable conversion, and as held by the executors in trust. (2 Story's Eq. Jur., § 1212.) This result is equally true of the real estate devised to the wife. (*Ross* v. *Roberts*, 2 Hun, 90 ; affirmed, 63 N. Y. 652.) There is an implied limitation upon the vesting of the legacy to this appellant. Therefore the vesting is not unlimited nor is it too remote.

(*Trustees of the Theological Seminary of Auburn* v. *Kellogg*, 16 N. Y. 83.)

*Jno. E. Parsons* for New York City Mission and Tract Society, appellant. The legacy to this appellant did not vest until the death of the widow. (*Vincent* v. *Newhouse*, 83 N. Y. 505.) At the death of the widow the society was incorporated. It was able, therefore, to take the legacy invested. (*Ingliss* v. *Trustees of Sailors' Snug Harbor*, 3 Peters, 99 ; *Burrill* v. *Boardman*, 43 N. Y. 254 ; *Houghton* v. *Whitegreave*, 1 Jac. & Walk. Ch. 145 ; *Teed* v. *Morton*, 60 N. Y 506 ; *Moncrief* v. *Ross*, 50 id. 431 ; *Hatch* v. *Bassett*, 52 id. 359.) The bequest is to be paid out of the proceeds of real estate to be sold by the executors, if it is void no equitable conversion takes place, and the proceeds of the sale of the real estate go to the heirs at law. (*Ackroyd* v. *Smithson*, 1 Brown's Ch. 503.) Where land is directed to be sold to raise funds for the payment of certain bequests, and the bequests fail for any reason, the land or its proceeds, if not sold, is still real estate, and goes to the heir at law ; and if the fund by which the bequest was to be paid was composed partly of personalty and partly of the proceeds of real estate, the two must be separated if the bequest fails, and the next of kin and heir at law take their respective portions only among others. (*Smith* v. *Claxton*, 4 Mad. 484 [1819] ; *Hawley* v. *James*, 5 Paige, 318, 844 [1835] ; *S. C.*, 7 id. 213, 219 [1838] ; *Bogert* v. *Hertell*, 4 Hill, 492 [Ct. of Errors, 1842] ; *McCarthy* v. *Terry*, 7 Lans. 236 ; *Betts* v. *Betts*, 4 Abb. N. C. 317, 419 [1876] ).

*Alfred Roe* for George G. Moore, appellant. The American and Foreign Christian Union and The New York Tract Society not being incorporated at the time of the decease of the testator, the bequests or legacies to them in his will are void. (*Owens* v. *Missionary Society*, 14 N. Y. 380 ; *Sherwood* v. *Am. Bible Society*, 1 Keyes, 561 ; *Marx* v. *McGlynn*, 88 N. Y. 357.) The subsequent incorporation of un-

incorporated societies will not vitalize a bequest to them. (*Burrill* v. *Boardman*, 43 N. Y. 254, 262.) A will takes effect at the death of the testator. Where there is no contingency provided for in the will, the law will not invent or manufacture one, except in the cases provided for in the statutes, such as marriage, birth of a child, etc. (*Manice* v. *Manice*, 43 N. Y. 303.) If the remainder vested in the next of kin on the death of the testator, their title cannot be divested by the subsequent incorporation of the societies. (*Owens* v. *Missionary Soc.*, 14 N. Y. 380; *Bascom* v. *Albertson*, 34 id. 584; *White* v. *Howard*, 46 id. 144.) The bequest to the first Reformed Dutch Church, etc., was entirely too remote and uncertain. (*Leonard* v. *Burr*, 18 N. Y. 96; *Dodge* v. *Pond*, 23 id. 69; *Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108; *Leonard* v. *Bell*, 1 T. & C. 608; 58 N. Y. 676.) The record or judgment in the case of *Forrest* v. *Fanshaw* was put in evidence by the counsel for the executor for a special and limited purpose, and cannot be used or referred to for any other purpose. (*Stowell* v. *Hazlet*, 66 N. Y. 635.) The Woman's Hospital was not a party to the prior action, and no affirmative judgment or relief could have been asked for as against it, and the point now presented was not and could not have been litigated or passed upon in that action. (*Sweet* v. *Tuttle*, 14 N. Y. 465; *Angell* v. *Hollister*, 38 id. 378; *Brower* v. *Bowers*, 1 Abb. Ct. App. Dec. 214.) The trust created as to the sum of $9,000 is void. It is obnoxious to the statute against perpetuities in that it creates an estate for three lives in being at the decease of the testator and the bequest over to the Woman's Hospital forms a part of a void trust, and cannot be separated therefrom. (*Amory* v. *Lord*, 9 N. Y. 403; *Post* v. *Hover*, 33 id. 593; *Knox* v. *Jones*, 47 id. 389; *Holmes* v. *Mead*, 52 id. 332; *Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108; *Coster* v. *Lorillard*, 14 Wend. 265, 364.)

*J. H. K. Blauvelt* for Daniel Fanshaw, appellant. The American and Foreign Christian Union, the Prospect Hill Reformed Dutch Church and the New York City Mission and

Tract Society, not having been incorporated when the testator died, cannot take the legacies directed to be paid to them by his will. (*Owens* v. *Miss. Soc.*, 14 N. Y. 380; *Sherwood* v. *Am. Bible Soc.*, 1 Keyes, 561; *Bascom* v. *Albertson*, 34 N. Y. 584; *White* v. *Howard*, 46 id. 144; *Holmes* v. *Mead*, 52 id. 332; *In re Abbott*, 3 Redf. 303; *McKeon* v. *Kearney*, 57 How. 349; *First Presb. Soc.* v. *Bowen*, 21 Hun, 389; *Marx* v. *McGlynn*, 88 N. Y. 357.) The incorporation of a society after the testator's death does not give it power to take. (*Leslie* v. *Marshall*, 31 Barb. 560; *Baptist Ass'n* v. *Hart's Ex'rs*, 4 Wheat. 1; *Trustees Sailors' Snug Harbor*, 3 Pet. 99; *Sherwood* v. *Am. Bible Soc.*, 1 Keyes, 561.) The societies which were not incorporated at the testator's death cannot take the bequests as a charitable use. (*Bascomb* v. *Albertson*, 34 N. Y. 584; *Fontaine* v. *Ravenel*, 17 How. [U. S.] 389; *Wetmore* v. *Parker*, 57 N. Y. 450.) The bequest to an unincorporated society of the character named in the will is a gift to an indefinite charitable use. (*Phelps* v. *Pond*, 23 N. Y. 69; *Bascomb* v. *Albertson*, 34 id. 584; 2 Kern. 406; 23 N. Y. 310; 46 id. 144; *S. C.*, 52 Barb. 298.) As the ownership to the legacy to the Reformed Dutch Church might have been suspended for five or twenty-five years after the year 1856, it was void. (*Bascomb* v. *Albertson*, 34 N. Y. 584; *Phelps* v. *Pond*, 23 id. 69; *Leonard* v. *Burr*, 18 id. 96.) The bequest to the Woman's Hospital is void for unduly suspending the absolute ownership of the fund. (*Fisher* v. *Fields*, 10 Johns. 495; *Edsall* v. *Waterbury*, 2 Redf. 48; *Cowenhoven* v. *Schuler*, 2 Paige, 122; *Clark* v. *Clark*, 8 id. 160; *Bean* v. *Bowen*, 47 How. 306; *Bingham* v. *Jones*, 25 Hun, 6; *Marx* v. *McGlynn*, 88 N. Y. 357; *Morse* v. *Morse*, 85 id. 53; *Amory* v. *Lord*, 9 id. 404; *Knox* v. *Jones*, 47 id. 389; *Colton* v. *Fox*, 67 id. 348; *Leavitt* v. *Wolcott*, 95 id. 212; *Coster* v. *Lorillard*, 14 Wend. 265; *Tucker* v. *Tucker*, 5 N. Y. 208; *Woodruff* v. *Cook*, 61 id. 640; *Monarque* v. *Requa*, 53 How. 438.) A possibility at the creation of the limitation, that the event upon which it depends may exceed in point of time the authorized period, is fatal to it. (4 Kent's Com. 283; *Hawley*

v. *James*, 16 Wend. 61; *Tucker* v. *Tucker*, 5 N. Y. 408; *Brown* v. *Evans*, 34 Barb. 594; 16 Wend. 121.) The Woman's Hospital and the parties who deny the validity of the legacy claimed by it being co-defendants in this action are entitled to have the said question determined as between themselves. (Code, § 1204.) The judgment in *Forrest* v. *Fanshaw* is not *res adjudicata* as between the Woman's Hospital and its co-defendants in this action. That judgment did not bind the Woman's Hospital and it can, therefore, be of no binding effect upon the other parties to the action. Estoppel, to be effectual, must be mutual. (*Brower* v. *Bowers*, 1 Abb. Ct. App. Dec. 214; *Remington P. Co.* v. *O'Dougherty*, 81 N. Y. 474; *Burwell* v. *Haight*, 51 Barb. 267; *Angell* v. *Hollister*, 38 N. Y. 378; *Sweet* v. *Tuttle*, 14 id. 456; *Douglass* v. *Ireland*, 73 id. 100; *Burdick* v. *Post*, 12 Barb. 168.) If that decree had been adverse to plaintiffs, it would not have estopped them; hence the executors were not estopped. (*Brower* v. *Bowers*, 1 Abb. Ct. App. Dec. 214; *Angell* v. *Hollister*, 38 N. Y. 378; *Sweet* v. *Tuttle*, 14 id. 465.) The societies which were not incorporated cannot take even on the theory that the executors held the legacies bequeathed to them as trustees. The gift is immediate and vested at least as a right at the death of the testator in all who could legally take, or who were competent to take under the provisions of the will. (*Hennessy* v. *Patterson*, 85 N. Y. 91.)

*Charles H. Knox* for The American and Foreign Christian Union, appellant. The legacy to this appellant is not to an unincorporated society, but it is left to Mr. Fanshaw's executors; they take as valid trustees. (*Burrill* v. *Boardman*, 43 N. Y. 254; *Vincent* v. *Newhouse*, 83 id. 511; *Inglis* v. *Trustees, etc.*, 3 Peters, 99; *Holmes* v. *Mead*, 52 N. Y. 342; *Carmichael* v. *Carmichael*, 4 Keyes, 346; *Purdy* v. *Hayt*, 92 N. Y. 454; *Savage* v. *Burnham*, 17 id. 571; 2 Redf. on Law of Wills, 239; *Campbell* v. *Rowden*, 18 N. Y. 412; *Smith* v. *Edwards*, 88 id. 92; *Teed* v. *Morton*, 60 id. 506; *Delaney* v. *McCormack*, 88 id. 183.) The evidence which has been given,

proving, and in fact admitting that the defendant, The American and Foreign Christian Union, is the same society that the testator intended to benefit, is admissible. (*Lefevre* v. *Lefevre*, 59 N. Y. 434; *N. Y. Inst. for Blind* v. *Howe's Exrs.*, 10 id. 84.) The language and provisons of the will are not compatible with a present gift to this appellant. (*Vincent* v. *Newhouse*, 83 N. Y. 511.)

*S. H. Thayer* for executor, respondent. The gift of one-eighth of the residue fund to the American and Foreign Christian Union was properly adjudged to be valid, there being no question as to the identity of the intended legatee and an association bearing that name being in existence at the time the will was made, and well known to the testator. (*Burrill* v. *Boardman*, 43 N. Y. 254.) The gift of two other eighth parts to the first "Reformed Low Dutch Church" that should be built within a certain specified district was properly held to be a good and valid bequest to the Prospect Hill Reformed Dutch Church as that church conforms in all respects to the requirements of the bequest, and was built within the life-time of the widow, and still exists. (43 N. Y. 254.) The legacy of $9,000 to the Women's Hospital was properly adjudged to be a good and valid bequest. The provisional gift to a third annuitant on the happening of a contingency which has not occurred will be disregarded. (2 R. S., § 17; *Harrison* v. *Harrison*, 36 N. Y. 548.)

*W. W. Hoppin, Jr.* for the Woman's Hospital, respondent. The right of the Woman's Hospital to the legacy is not affected by reason of the statute against suspending the power of alienation, though the provisions of the legacy as regards the sister may be void. The valid provisions may be separated from the illegal ones. (3 R. S. [Banks' 7th ed.] 2176, §§ 18, 19; id. 2256, § 2.) Where an estate is vested in trustees upon several independent trusts, one or more of which is valid and the other void, the latter will be rejected and the estate of the trustees will be upheld to the extent necessary to enable them

to execute the valid trusts. (*Harrison* v. *Harrison*, 36 N. Y. 543; *Manice* v. *Manice*, 43 id. 384; *Van Schuyver* v. *Mulford*, 59 id. 426.) Although this respondent was not a party to the prior action, the executors of the estate and also the appellants, or those who preceded them in interest, were, and they had a right to appeal from that adjudication, and having failed to do so, are bound by it. (*O'Brien* v. *Heeney*, 2 Edw. 242; *Boerum* v. *Schenck*, 41 N. Y. 182.)

*Joseph A. Shoudy* for Margaret A. Coverly, respondent. The Prospect Hill Reformed Church, New York City Mission and Tract Society and the American and Foreign Christian Union not having been incorporated at the time of the death of the testator, the bequests to them are invalid (*Owens* v. *Missionary Soc.*, 14 N. Y. 380, 385; *Downing* v. *Marshall*, 23 id. 366; *Bascomb* v. *Albertson*, 34 id. 584; *Sherwood* v. *Am. Bible Soc.*, 38 id. 561; *White* v. *Howard*, 46 id. 144; *Marx* v. *McGlynn*, 88 id. 357; *Betts* v. *Betts*, 6 Abb. N. C. 317; *McKeon* v. *Kearney*, 57 How. 349; *First Presb. Soc. of Chili* v. *Bowen*, 21 Hun, 389; *Baptist Asso.* v. *Hart's Exrs.*, 4 Wheat. 1.) This is so whether we regard the legacies (assuming them to be valid) as vested remainders (*Owens* v. *Missionary Soc.*, 14 N. Y. 380; *Downing* v. *Marshall*, 23 id. 366; *Marx* v. *McGlynn*, 88 id. 357; *Betts* v. *Betts*, 4 Abb. N. C. 317), or as contingent remainders (*Bascomb* v. *Albertson*, 34 N. Y. 584; *White* v. *Howard*, 46 id. 144), or otherwise (*McKeon* v. *Kearney*, 51 How. 349; *First Presb. Soc.* v. *Bowen*, 21 Hun, 389; *Sherwood* v. *Am. Bible Soc.*, 38 N. Y. 561; *Baptist Asso.* v. *Hart's Exrs.*, 4 Wheat. 1). Capacity to take is not given by any subsequent act. (*Owens* v. *Missionary Soc.*, 14 N. Y. 380; *Baptist Asso.* v. *Hart's Exrs.*, 4 Wheat. 1; *Betts* v. *Betts*, 4 Abb. N. C. 317; *Leonard* v. *Davenport*, 58 How. 384; *White* v. *Howard*, 46 N. Y. 144; *McKeon* v. *Kearney*, 57 How. 349; *Leslie* v. *Marshall*, 31 Barb. 560; *Londar* v. *Davenport*, 58 How. 384.) Said bequests cannot be sustained as charitable or religious uses. (*Owens* v. *Missionary Soc.*, 14 N. Y. 380; *Downing* v. *Marshall*, 23 id.

366; *Phelps* v. *Pond*, id. 66; *Bascomb* v. *Albertson*, 34 id. 584; *Sherwood* v. *Am. Bible Soc.*, 38 id. 561.; *Holmes* v. *Mead*, 52 id. 332; *First Presb. Church* v. *Bowen*, 21 Hun, 389; *White* v. *Howard*, 46 N. Y. 144; *Matter of Abbott*, 3 Redf. 303.) As the bequest of $9,000 to the Woman's Hospital Association is not to be paid over until after the termination of three lives in being, at the death of the testator, the béquest, together with the bequest of the income of the fund, is void. (*Marx* v. *McGlynn*, 88 N. Y. 357; *Edsall* v. *Waterbury*, 2 Redf. 48; *Covenhoven* v. *Shuler*, 2 Pai. 122; *Clark* v. *Clark*, 8 id. 160; *Bean* v. *Bowen*, 47 How. 306; *Morse* v. *Morse*, 85 N. Y. 53; 3 R. S. [7th ed.] 2256, tit. 4, §§ 1, 2; id. 2176, §§ 14, 15; *Phelps* v. *Pond*, 23 N. Y. 66; *Knox* v. *Jones*, 47 id. 389; *Woodruff* v. *Cook*, 61 id. 638; *Colton* v. *Fox*, 67 id. 348; *Amory* v. *Lord*, 5 id. 403; *Coster* v. *Lorillard*, 14 Wend. 265; *Hawley* v. *James*, 16 id. 61.) This defendant is not estopped from asserting the invalidity of the trust by the judgment in *Forrest* v. *Fanshaw*. The Woman's Hospital was not a party to that action, and, therefore, was not bound by the judgment. (*Knauth* v. *Bassett*, 34 Barb. 31; *Brower* v. *Bowers*, 1 Abb. Ct. App. Dec. 214; *Lansing* v. *Montgomery*, 2 Johns. 382; *Clute* v. *Jones*, 28 id. 280; *Lawrence* v. *Campbell*, 32 id. 455; *Campbell* v. *Consalus*, 25 id. 613; *Burdick* v. *Post*, 12 Barb. 184; *Burwell* v. *Knight*, 51 id. 267; *Barry* v. *Brune*, 8 Hun, 395; *Sweet* v. *Tuttle*, 14 N. Y. 465; *Angel* v. *Coon*, 38 id. 378; *Stowell* v. *Chamberlain*, 60 id. 272.)

MILLER, J. The testator by his will devised to his widow, during her natural life, the use, net income and profits of his residence on Third avenue in the city of New York, and the nineteen lots and gores connected therewith. He also directed his executors to sell so much of his real estate, not specifically devised, as would be sufficient to produce an annual income of $1,500 by investing the proceeds in bonds and mortgages, which annuity was to be paid to the widow of the deceased in semi-annual installments as long as she might live. Provision was

also made for the sale of any portion of the real estate, the proceeds of which should be required for the payment of repairs, taxes, assessments, or other exigencies, and after the death of his widow the testator authorized his executors to sell what remained of the real estate and add the proceeds of the sales to the amount invested to produce the widow's annuity of $1,500, and from this fund he directed them to pay the widow's funeral expenses and such debts as she might have contracted, as well as all mortgages which might then be standing against him. He then directed that the balance of said fund be "then" divided into eight equal shares as stated in the will.

The main questions which we are called upon to determine in this case relate to the disposition made of four of these shares, one to the American and Foreign Christian Union, one to the New York Tract Society, and two to the Reformed Low Dutch Church. Neither of these societies was incorporated at the time of the decease of the testator, but they were all incorporated at the time of the death of his widow.

The clauses in the will relating to these four bequests are as follows:

" One other portion I give to the American and Foreign Christian Union, formed in the city of New York, in the year 1849. The interest to be expended yearly in donations of their publications among the Sabbath School Libraries."

" One other portion I give to the New York Tract Society, founded in the city of New York on the 19th day of February, 1827. The interest thereof to be expended each and every year in the purchase of the American Tract Society's publications; said works to be distributed among the most depraved part of the population of the city of New York."

" Two other portions I give to the first Reformed Low Dutch Church that may be built after the year 1856, between the Fifth avenue and the East river, and Seventy-ninth and Ninety-fifth street."

The most important question to be decided in relation to these bequests is, whether they vested immediately at the time of the death of the testator, or afterward at the decease of his

widow.  If the gift of these legacies was intended to be im-
mediate upon the death of the testator and therefore vested at
that time, then the directions in the will concerning them were
inoperative and void for the reason that they were bequests to
societies which were not incorporated by the laws of this State
and which, therefore, could not take.  If the bequests made
were ineffectual on account of the incapacity of the societies
named to take the same, then the four parts of the fund created
would not be disposed of by the will, and necessarily and ac-
cording to law would vest in the next of kin of the testator, and
if so vested, their right to the same could not be divested or
impaired by any subsequent action or incorporation of these
societies or associations.  If, however, they did not become
vested until the death of the widow, then the societies named,
being incorporated according to law, were authorized to take.
The question arising as to the vesting of the bequests referred
to, must be determined by the intention of the testator to be
derived from the will itself.  It may be assumed, we think,
that the testator understood, at the time of making the will,
that the societies named in the clauses under consideration were
not incorporated, for he refers to each of them in language
which plainly indicates that such was the case, while in other
bequests made to incorporated societies, he mentions them as
such, and states the time when they were so incorporated.  In
regard to the legacy to the Dutch Church, he refers to the
church as one that may be built after the year 1856, thus show-
ing that he knew the fact that it had no legal existence at the
time.  It is thus apparent that he had in contemplation the
future incorporation of the societies and of the church named,
by means of which they would be competent to take the bequests
made in his will.  He evidently was looking to a future and
not a present vesting of the bequests.  He first provided for
the support of his wife during her life and then for a disposition
of the proceeds of his estate which might remain after her
death.  It was at this time and not before that the legacies
named were to take effect.  He expressly declares that " then "
the balance of said fund shall be divided.  Until then it could

not be divided and was to be held for the purposes named in the will. Prior to that time it was given to nobody, and it was only after the death of his widow that the division could be made and these provisions of his will carried out. It was "then," as the will says, "I give" in the clauses referred to. There is nothing in the language employed which indicates that before his widow's death he intended to make a gift, or to vest any gift in the legatees named.

Giving to the will the interpretation which is to be derived from its import and the purposes in view, and to the language employed, the construction appropriate to the terms used, it is · a reasonable and fair inference that the testator's intention was that the bequests made should not become vested until the happening of the event upon which they might be made available. Any other construction would impute to the testator a design to effect an object contrary to the plain meaning of the language employed. It should be borne in mind that the fund out of which the legacies in question were to be paid had no legal existence until the decease of the testator's widow. It was upon the happening of that event that it was to be created, and it was only then that it could be ascertained what the fund would be. It might be more or less according to the exigencies provided for by the will, and it might be nothing, and it was only in case a balance remained that the same was to be divided as directed. It was then to be disposed of or given away, and not before that time.

In *Vincent* v. *Newhouse* (83 N. Y. 505) the testator, by his will, gave certain lands to his wife for life and directed that at her death the lands should be sold by the executor, and the proceeds equally divided among three of his children named, and the children of three others, share and share alike, and if either of the heirs mentioned should die after the date of his will, and before their shares were paid them, the share of the one so dying without issue to be equally divided among the other heirs before named, and it was held that the will intended a conversion of the land into money, the actual conversion, however, not to take place until the termination of the

life estate, and that the land was converted into money from the time the sale was directed to be made, and that no portion of the remainder vested at the death of the testator, but only upon the death of the widow.

In the case cited it was not until the conversion of the land into money that the fund was created which was disposed of by the will, and it was only then that the estate became vested. As was said in *Hoghton* v. *Whitgreave* (1 Jac. & Walk. Ch. 145), quoted in the opinion in the case last cited, "not only was there no bequest before the widow's death, but the subject-matter did not then exist in the shape and form in which it was given." *Vincent* v. *Newhouse* (*supra*) is analogous to the case at bar and directly in point. Although, in the case now considered, the direction to sell was not imperative, as it is apparent, from the general provisions of the will, that the testator intended such real estate to be sold, the doctrine of equitable conversion will apply. (*Power* v. *Cassidy*, 79 N. Y. 602.) The present case is far stronger than that of *Vincent* v. *Newhouse* (*supra*) upon the question of the vesting of the estate prior to the death of the testator's widow, for not only was the land to be sold and converted into money, but the annuity fund was to be taken in connection with the proceeds of the sale, and constituted a portion of the entire fund from the proceeds of which the legacies in question were to be paid. The whole estate was thus held for the purposes named during the life-time of the testator's widow in abeyance to become vested in the legatees named only upon her decease and after a fund had been realized, to be disposed of and distributed as provided. Upon the happening of that event, as the real estate was to be sold and converted into personalty, it must be regarded as having passed through the change provided for by the will, whether sold or not, and as having become vested in the legatees named. (*Savage* v. *Burnham*, 17 N. Y. 561; *Manice* v. *Manice*, 43 id. 303.)

It is manifest that the testator had in contemplation the legal organization of the societies to which the bequests stated were made, by the incorporation of the same. It was only

upon such a contingency that the legacies mentioned would vest in the legatees, and it follows that each of the bequests was dependent upon the conditions to be performed during the life of testator's widow.

Considering the purposes which were to be accomplished it is quite clear that the legacies given by a division of the fund into eight parts did not become vested at the testator's death. The fund was only to be enjoyed upon the happening of a future event, and until then no benefit was to accrue from the same. It was not in the nature of a legacy given where the time of payment is postponed for the satisfaction or convenience of the estate, as where land is devised to A. for life, remainder to B. in fee, charged with a legacy to C., payable at the death of A., where the legacy will vest instanter within the rule laid down in Jarman on Wills (5th Am. ed.), 835. In such a case the legacy is absolute, and vests at once, while the payment of the same is deferred. In the case at bar the postponement is not for the benefit of the estate, and, by the express provision of the will, the legacies can only take effect and become vested upon a disposition of the fund created thereby. The gift rests entirely upon a future event, and it is only when that occurs that it springs into existence. Prior to that it has no vitality or force.

It was, no doubt, the intention of the testator that all eight shares of the fund created were to vest at the same time. The first of these to the grandchildren contains no words of gift, but the testator declares, preliminarily, that the balance of the fund shall be divided into eight shares and disposed of as afterward provided, and then he directs that one portion shall be divided among his grandchildren. The use of the words " disposed of " in connection with the other language employed cannot, we think, be said to be sufficient to create a gift which became vested immediately upon the testator's death, and the rule as laid down by FOLGER, J., in *Warner* v. *Durant* (76 N. Y. 136), that, " Where there is no gift, but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in the beneficiary will not

take place until that time arrives," applies. It is apparent that the first share could not have vested at the testator's death, and that he did not design that any of them should vest until the decease of his widow, and the final distribution and division of the fund to be created under his will.

We are referred to some authorities to sustain the position that, when legacies are payable in the future without any conditions annexed, or expressed intention to the contrary, they vest at the time of the death of the testator, but none of these cases are applicable where the intention of the testator is apparent, as in the case at bar, that the legacies should only become vested at the happening of a particular event and the fulfillment of the conditions annexed, upon which alone they would become valid and effectual.

From the examination we have given to the question discussed, we think the conclusion inevitable that the legacies in controversy became vested in the legatees named at the death of the testator's widow and the creation of the fund provided for by the will. At that time the societies and church named were incorporated and authorized by law to take, and it was not necessary that they should be incorporated prior to the testator's death. It was quite enough that they had an actual legal existence at the death of the widow, at which time the division was to be made and the right to receive their portions of the fund only accrued.

It was also sufficient that the legatees were so described that they could be ascertained and known when the right to receive the legacies existed. (*Holmes* v. *Mead*, 52 N. Y. 332; *Lefevre* v. *Lefevre*, 59 id. 434.)

The legatees being specifically named in the will, and the intention of the testator manifest that they should become legally authorized to take under the same, the case is brought directly within the principle laid down in *Burrill* v. *Boardman* (43 N. Y. 254), where it is held that a bequest limited to the use of a corporation to be created within the period allowed for the vesting of future estates and interests is valid. In the case cited the will provides for the establishment of a hospital to be

incorporated within two years after the testator's death, in cases two lives named in his will should continue so long. This provision might well apply to that case, where there was no existing law for the incorporation of the hospital named, which the testator intended to provide for, and without which the gift would be of no avail and could not be carried into effect. Such a provision is not material in the case at bar, for the reason that valid provision is made by law for the organization and incorporation of the church and societies named and, therefore, no directions were required. Besides, as already indicated, the language of the will in question shows that the testator had full knowledge of the facts as to the formation and existence of the legatees, and a clear intention that they should be organized according to law in order that they might receive the benefit of his bounty.

It is claimed that no time was limited within which the Dutch church was to be built, that the time was indefinite and that it might take place within five years and might not within one hundred, and, therefore, that the contingency might not arise within the lives of any two persons in being at the time of the death of the testator. There is, we think, no foundation for this position, for the legacy named depends upon the lawful organization of the church prior to the decease of the testator's widow. Upon the occurrence of that event the right to the legacy became vested if the church was then incorporated and had a legal existence. If it had no such existence then the legacy lapsed and vested in the next of kin of the testator. There being no legal organization to take, it would follow that there was no body authorized to receive the legacy. Only a single life was involved that limited the bequest, and upon the termination of that life the legacy became vested if the legatee was, at that time, authorized to take the same. It could not, therefore, remain undetermined for any period of time after that event.

The remarks made in this connection are equally applicable to the incorporation of The American and Foreign Christian Union and The New York Tract Society.

There is, therefore, no question in regard to the vesting of these different portions of the estate at the time of the testator's death, or subsequent thereto, and up to the period of division and distribution in accordance with the will, and after a careful examination we are satisfied that the legacies which have been the subject of consideration were valid and effectual. To hold otherwise would be in direct violation of the intention of the testator, as expressed by his will, and the principles of law which are applicable to the construction of instruments of this character.

It follows that the General Term erred in reversing the judgment of the trial court as to the legacies in question.

The remaining question relates to the right of the Woman's Hospital Association to the payment of a portion of the interest of a legacy of $9,000 and the payment of the principal after the death of the testator's sister, daughter-in-law and sister-in-law. As this bequest was not to be paid over until after the termination of three lives in being at the death of the testator, there was an illegal suspension of the power of alienation beyond two lives, and the bequest, together with the bequest of the income of the fund, is void. (3 R. S. [7th ed.] 2256, §§ 1, 2; id. 2176, §§ 14, 15.)

The provision in the will creating the trust is not capable of being separated into different parts so as to render a portion of it valid and another portion void. It is claimed that this legacy is subject to the provisions of sections 18 and 19 of 3 R. S. (7th ed.) 2176, and hence is valid, but we think that these sections are not applicable to a case of this character.

Nor do we think that the question as to the validity of this bequest to the Woman's Hospital is *res adjudicata* by reason of the judgment in the case of *Forrest* v. *Fanshaw*, a former action brought to obtain a construction of the will in question here. The Woman's Hospital was not a party to that action, and no affirmative relief was asked for against it, and the point now presented could not properly have been raised or litigated and passed upon in that action so as to bind the hospital. To act as an estoppel the judgment must be reciprocal and binding

upon both parties.   In the case cited the validity or invalidity of the bequest could not have been made the subject of adjudication, for the reason that the Woman's Hospital was not a party, and this difficulty is not obviated by the fact that the hospital claimed, and sought to avail itself of the benefit of the judgment.   We are unable to perceive that the claim made distinguishes the position of the Woman's Hospital from that which it would occupy if the decision had been adverse, and it had made the objection to the judgment on the ground it had not been a party to the action.   By accepting the result of the determination it did not change the relation which it occupied to the other parties in interest.   It cannot, we think, be said that because it received a portion of the legacy and thus acquiesced in the judgment, the other parties are precluded from objecting that the judgment was not binding upon it.   Its acceptance of the benefits of the legacy was not an act done as a party to the action, but independent of the judgment and cannot affect the rights of the other parties to object to the validity of the bequest.   The fact that the persons urging the objection were parties to the suit in which this determination was made, and as to them the court decided the bequest was valid, does not, we think, prevent their making the objection to its validity as against one who was not a party and therefore not affected by the judgment.   As the Woman's Hospital was not entitled to the benefit of this legacy for the reasons stated, the General Term erred in holding otherwise.

The payments by the executors of some portion of the income of the legacy to the Woman's Hospital were made in accordance with the judgment referred to, which was obligatory upon them, and hence they should not be called upon to account for the same.

For the reasons stated the judgment of the General Term should be reversed, and judgment of the Special Term affirmed except as to the Woman's Hospital and as to that reversed and the provision declared to be void, with costs of all parties to be paid out of the fund.

All concur, except RAPALLO and ANDREWS, JJ., not voting.
Judgment accordingly.