CHARLES M. DA COSTA AND JOHN E. PARSONS, AS EXECUTORS, ETC., OF HUGH MAXWELL, DECEASED, RESPONDENTS, v. SAMUEL W. BASS AND OTHERS, APPELLANTS AND RESPONDENTS.

*Will — when a legacy, given upon the death of a person entitled to receive the interest of a fund, will be held to vest at the time of the death of the testator.*

By the first clause of the third codicil of the will of Hugh Maxwell, the testator, after revoking a bequest of $25,000 to his sister Helen, contained in a codicil to his will, gave and bequeathed "the said twenty-five thousand dollars to my executors, the survivor or survivors of them, and his successors in trust, to *take possession of the same*, to invest and keep invested the same, and collect and receive the interest, income, assets and profits thereof, and to apply the same to the use of my said sister, Helen Requa, during her life, and upon her death, or, should I survive her, upon my death, I give and bequeath the said twenty-five thousand dollars as follows: Ten thousand dollars thereof to Harriot Eads, daughter of my said sister, and fifteen thousand dollars thereof equally to and between my neices Isabella and Agnes Barker and Virginia Bass."

Agnes Barker survived the testator, but died during the lifetime of the sister.

*Held,* that the legacy vested upon the death of the testator, and that her executors were entitled to receive it.

That the words "to take possession of" have great significance in determining the question.

*Warner* v. *Durant* (76 N. Y., 136); *Manice* v. *Manice* (43 id., 369) followed; *Shipman* v. *Rollins* (98 N. Y., 311) distinguished.

APPEAL from a judgment entered upon a trial at a Special Term Term of this court.

*George J. Greenfield,* for appellant, Ann E. Maxwell.

*Richard M. Henry,* for appellant, Bass.

*H. B. Clossen,* for plaintiffs, respondents.

*Edward C. Perkins,* for defendants, respondents, Hunt, Selfridge & Upshur.

BRADY, J.:

This action was brought to obtain a construction of the will of Hugh Maxwell, doubts having arisen upon the proper interpretation of the first clause of the third codicil of the will, which is as follows:

First. I do hereby revoke and annul the bequest of twenty-five thousand dollars ($25,000) to my sister, Helen Requa, contained in

the codicil to my will, dated November 5, 1870, and in place thereof I do hereby give and bequeath the said $25,000 to my executors, the survivors and survivor of them, and his successors in trust, to take possession of the same, to invest and keep invested the same, and to collect and receive the interest, income, issues and profits thereof, and to apply the same to the use of my said sister, Helen Requa, during her life and upon her death, or, should I survive her, upon my death I give and bequeath the said $25,000, as follows: Ten thousand dollars thereof to Harriet Eads, daughter of my said sister, and $15,000 thereof equally to and between my neices, Isabella and Agnes Barker and Virginia Bass.

The uncertainty arises from the death of Agnes Barker after the death of the testator, but during the life of Helen Requa, and the question is whether the legacy to Agnes vested. The learned justice in the court below held the gift to Agnes contingent, as it depended, he thought, upon her surviving Helen. In this view he seems to have been in error. The fund given the neices was *in esse*. It was the sum of $25,000 cut out of the general estate and set apart as a distinct and independent fund, which the testator gave to his executors in trust " to take possession of the same " to invest it and apply the proceeds to the use of his sister, Helen Requa, during her life, and upon her death he gave it to his neices.

There are evidences of an intention to give the sum named to them, although the possession of it by them was deferred. He gives the whole sum to his executors, in trust, " to take possession of," thus making them the mere custodians of the fund which he gave away, and only for the purpose of securing the payment of the income to his sister during her life. The words " to take possession of " have great significance in this regard. The case of *Shipman* v. *Rollins* (98 N. Y. 311), which seems to have influenced the judgment herein, and is relied upon by the respondents, has no application to this case, and should be in no sense at all controlling.

The decision there made was based upon the words of the gift, which were unusual, if anything in a will may be regarded as usual, except the attestation clause and the signatures. The distinction between that adjudication and this is unmistakable. There the fund to be distributed was not in existence. It was to be created by a sale of what was left of the estate after the death of the testator's wife,

and then to be divided. The court said until then it could not be divided, and was held for the purposes named in the will. Prior to that time it was given to nobody, and it was only after the death of his widow that the division could be made and these provisions of the will carried out. It was "then," as the will says, "I give" in the clauses referred to. There is nothing in the language employed which indicates that before his widow's death he intended to make a gift or vest any gift in the legatees named. And the court further said: "It should be borne in mind that the fund out of which the legacies in question were to be paid had no legal existence until the decease of the testator's widow. It was upon the happening of that event that it was to be created, and it was only then that it could be ascertained what the fund would be." Here the fund was ascertained and appropriated, and the executors required to take possession of it and invest it, that it might be safely and surely held for the legatees to whom it was given. The interest or income only was to be paid to another, and that during her life. In the course of the opinion the learned judge further said that reference had been made to authorities to sustain the position that when legacies are paid in future without any conditions annexed, or expressed intention to the contrary, they vest at the death of the testator, but that none of them were applicable where the intention of the testator was apparent that the legacies should only become vested at the happening of a particular event, and the fulfillment of the conditions annexed, upon which alone they would become valid and effectual. In the clauses here presented for consideration there are no conditions annexed. There is, indeed, nothing to be done but to receive, take possession of and invest the fund and pay over the income and principal to the persons entitled to receive them, named by the testator, at the proper periods therefor.

The only condition is the death of Helen, and that relates to and determines the time of possession. The fund was laid aside at once for the legatees named, and the taking possession was for them subject only to the payment of the income to another during her life. The cases said to have a bearing upon this subject far and near, are marked by distinctions which vary according to the phraseology of the clause or clauses considered, and present a variety of rules or doctrine which is more scientific, if not transcendental, than

it would be if the design of the testator be kept in view and his wishes carried out. If the clause in question were submitted to what may be called a natural test—the judgment of mankind, would be in favor of the proposition of a direct gift to the legatees named or their representatives. The natural construction would result in such a proclamation, but if it is to be interpreted by the refinements, the delicate distinctions, the subtle exceptions which are developed by the English cases upon which our adjudications are chiefly modeled, it becomes a difficult task. The dubious paths are tortuous and the step becomes uncertain. We are told that where there is no gift but by a direction to executors or trustees to pay or divide and to pay at a future time, the vesting in the beneficiary will not take place until that time, a rule which has had a distinction grafted upon it we are also told namely where the gift is to be severed instanter from the general estate for the benefit of the legatee, and in the meantime the interest thereof is to be paid to him, that is indicative of the intent of the testator that the legatee shall at all events have the principal and is to wait only for the payment until the day fixed.

But underlying both these doctrines is the general principle that where the gift is absolute and the time of payment only postponed, time not being of the substance of the gift but relating only to the payment, does not suspend the gift but merely defers the payment. (*Warner* v. *Durant*, 76 N. Y., 136.)

It has been often held that if futurity is annexed to the substance of the gift the vesting is suspended, but where the gift is absolute and the time of payment only is postponed, the gift is not suspended but vests at once. Critically examined, said FINCH, J., this amounts to practically saying that if the gift is future it is not present. But out of that has grown a distinction that where the only gift is in the direction to pay or distribute at a future time, the case is not to be ranked with those in which the payment or distribution only is deferred, but one in which time is of the essence of the gift. (*Smith* v. *Edwards*, 88 N. Y., 103, 104.)

In *Manice* v. *Manice* (43 N. Y., 369), it was more satisfactorily or more concisely said that where a bequest imports a gift and also a direction to pay at a subsequent time, the legacy vests and will not lapse by the death of the legatee before the time of payment has expired.

Here the subject of the gift was severed instanter from the general estate and the terms of the bequest import a gift, and thus the construction to be given, is at once suggested by the case just cited and *Warner* v. *Durant* (*supra*). When in the examination of a question kindred to the one involved here, we are fortunate enough to extract from the labyrinth of principles, rules, distinctions and exceptions which attend and obscure adjudications upon wills, two cases which develope rules for guidance, we may stop if indeed we ought not to rest there. We have in the terms of the clause as already suggested, the import of a gift and the severance of the fund from which it is to be paid. We have also a gift with no provision made in case of the death of one of the beneficiaries, which means that the testator did not intend to provide further, but to subject the share of a deceased beneficiary to the laws of inheritance or representation. The separation was an appropriation of the sum set apart and for whom? Undoubtedly for the persons named. Indeed it may be said that the terms of the gift justly and naturally interpreted are as if written thus:

I give $10,000 to Harriet Eads, daughter of my sister, and $15,000 equally to and between my neices, Isabella, Agnes Barker and Virginia Bass; and I set aside $25,000 for that purpose, which my executors, however, shall take possession of and invest until the death of my sister, Helen Requa, to whom during her life the income of the fund must be paid. This view is predicate of the severance of the fund from the general estate; the appropriation of it as a gift therefore, *eo instanti*, and the clear intention that its possession was only withheld from the legatees to secure to another the income of it during her life and to accomplish that only. The disposition of these questions, however circuitous the route may be, to that edict depends upon the intention of the testator. It is not always perhaps an easy task to ascertain precisely what it was, but it may be successfully exposed if we can in the majority of cases resist the influence of established subtleties which too often mislead. A direct simple test is a much better exponent than technical, abstruse allies which are either too delicate to employ with clearly accurate results or too obscure to enlighten.

The clause in question regarded from a simple stand point was a gift to the person named, with the income payable to Helen Requa

during her life. The words "upon her death I give," etc., being an unfortunate method of saying upon her death, my neices shall have possession of the fund which I give them in the shares stated, but the interest or income of which I mean to give my sister during her life. For these reasons the judgment should be reversed and decree entered in favor of the administrators of Agnes Barker. The costs of the plaintiff may be paid out of the fund belonging to the successful parties. No other costs are allowed.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment reversed, decree entered as directed.