THE AMERICAN BIBLE SOCIETY AND OTHERS *v.* THE AMERICAN COLONIZATION SOCIETY, APPELLANT, AND LEMUEL B. STANTON AND OTHERS, RESPONDENTS.

*Will — a legacy to a corporate legatee, incorporated under the laws of, and having its principal place of business in another State, and having only an unincorporated auxiliary society in the State of New York, under a designation in the will as " of or in the city of New York," is collectible by such corporation.*

A testatrix, by her will, provided that on the death of one of the devisees therein named the devised property should be sold and the proceeds thereof be equally divided between " the American Bible Society, the American Tract Society, the New York Seamen's Friend Society and the American Colonization Society, all of or in the city of New York."

The American Colonization Society was incorporated by the legislature of the State of Maryland, in 1837, and had, at the time of the probate of the will in question, auxiliary societies in nearly all of the States of the Union, its headquarters being at Washington, in the District of Columbia.

One of these auxiliary societies existed in the State, many of its members residing in the city of New York, but was not incorporated.

*Held,* that the words, "all of or in the city of New York," being no part of the names of the corporations mentioned in the will, referred only to corporations either existing by law, with head-quarters at the city of New York, or having head-quarters elsewhere, with a place of business in the city of New York, and that the American Colonization Society, having a local society in the city of New York, was the corporation described in and intended by the testatrix in her will as the corporation entitled to receive one-quarter of the proceeds of the sale of the property in question.

Appeal by the defendant, the American Colonization Society, from so much of a judgment entered at the New York Special Term June 8, 1887, as denied to the American Colonization Society, the appellant, the right to recover the one-fourth part of the estate of Sarah Bunce, deceased.

Sarah Bunce died in the city of New York in 1851, leaving a last will and testament dated July 16, 1833, and a codicil thereto dated October 18, 1849. The material part of the codicil upon which the question in this case arises is as follows : "Sixthly. I give to my beloved niece, Sarah B. Munsell, and her husband, Henry H. Munsell, for their joint lives, my house and lot No. 18 (eighteen) Tenth street ; on their death I direct the same to be sold by any trustee, or other person, to be appointed by the proper tribunal in the State of New York, and the proceeds divided evenly among the following societies, to wit : The American Bible Society, the American Tract Society, the New York Seamen's Friend Society and the American Colonization Society, all of or in the city of New York. Lastly. I direct that no legacy or devise shall fail by reason of any mistake or change in name, or want of incorporation of any society by their incapacity to take by devise or other defect, but in such event shall remain with my executor to be applied to similar use at his arbitrary discretion."

*Theron G. Strong* and *F. Mathewson,* for the appellant.

*William H. Holdane,* for the respondents.

Macomber, J. :

It is conceded on all sides that each of the plaintiffs is entitled to recover one-fourth of the proceeds to be derived by the sale of the premises mentioned in the codicil and described in the complaint. It will be observed that it is not the New York Seamen's Friend

Society named in the codicil which is one of the plaintiffs, but the American Seamen's Friend Society; yet, it was so obvious that the intention of the testatrix was that one-fourth of this part of her estate should go to the society represented by that plaintiff, that no question has been raised in regard thereto.

The right of the appellant, the American Colonization Society, to the remaining one-fourth is contested by the other defendants, who are the next of kin of the testatrix, upon the ground that the appellant is not the beneficiary designated by the codicil.

The American Colonization Society existed as an unincorporated institution from about the year 1816 to 1831, when, by an act passed at that time, and by an amendatory act of 1837, it was incorporated by the legislature of the State of Maryland. It has always been known as a national organization having auxiliaries in nearly all, if not all, of the States of the Union, with head-quarters at Washington, D. C. It never has been known by any other name than the American Colonization Society. There is no dispute or question made in regard to the identity of this particular corporation which asks for this portion of the estate of the deceased. Its identity is as distinctly established as that of either of the counsel in this case. Why, then, the question arises, did the trial court refuse to award a portion of the decedent's estate to it? If its judgment can be maintained at all, it must be upon the statement of the learned judge at the Special Term, who says : " It is quite obvious that the testatrix intended that the bequest should not be to the appellant, the American Colonization Society. but to the society which was organized in the State of New York as an auxiliary society."

There was a New York State Colonization Society which existed as an unincorporated institution long before, and for six years after, the execution of the codicil of the testatrix, and which was finally organized under that name by an act of the legislature of New York. (Laws of 1855, chap. 241, p. 376.) The last-named society was, of course, at the time of the writing of the codicil, incapable of taking the legacy because it was not incorporated, and consequently had no legal existence ; nor was it incorporated afterwards until after · the death of the testatrix. In the case of *Shipman* v. *Rollins* (98 N. Y., 311, the legatee was incorporated intermediate the making of the will and the death of the testator ; and because it had a legal existence

at the time the will took effect, as was contemplated by the testator, the court permitted the legatee to hold the bequest. But resort cannot be had to that principle in this case, for the State society was not incorporated until 1855, four years after the death of Mrs. Bunce.

No argument is presented by the respondents denying the appel-lant's ability to take and hold bequests, but the contention in their behalf is simply that it is not the party designated in the will. It is to be observed 'that the expression, " all of or in the city of New York," is in no sense a part of the name of either of the corpora-tions named in the instrument. Had the codicil said " The Ameri-can Colonization Society of the city of New York," some reasonable ground would be afforded for the position taken by the counsel for the next of kin of the testatrix.

Generally the designation of a corporation as being of a certain place, constitutes a part of its legal name for the transaction of business, but in this instance there is no designation of the Ameri-can Colonization Society as being of the city of New York. The expression used " all of or in the city of New York" is in the alternative, meaning the corporation either existing by law with head-quarters at the city of New York, or having its head-quarters elsewhere, with a place of business in the city of New York con-ducted by agents or otherwise. But was not the appellant, in every material sense, in the city of New York, within the meaning of the term which was evidently in the mind of the testatrix? It was established by the evidence, without dispute, that the New York Colonization Society, both before and after incorporation, was a mere hand or means to enable the parent society, the American Colonization Society, to carry on its business, which was the coloni-zation of free colored persons upon the coast of Africa. It is shown that the agents of the American Colonization Society organ-ized the local society of the State of New York. Nearly all of the expeditions carrying emigrants to Liberia sailed from the port of New York; all of the moneys collected by the New York Coloni-zation Society were forwarded to the American Colonization Society at Washington and expended by that corporation, and none of them were disbursed by the local or auxiliary society in the city of New York. Such also was the practice in other, if not all, of the States of the Union.

As the chief witness in the case says, the State organizations, whether incorporated or otherwise, were but the agents by which the parent society conducted its work. Each of the State societies had representation under rules established by the American Colonization Society, fixed at the rate of one delegate to the annual conventions for every sum of $500 subscribed in the particular State. It is further shown that at the annual meeting held within a few months after the date of the codicil, seven of the sixty-six vice-presidents of the parent society were residents of the city of New York. Such, presumably, was, the proportionate interest taken in the general work of the parent society by the city and by the State of New York prior to the execution of the codicil, for at the annual meeting in January, 1851, in the absence of Henry Clay, the president of the society, Anson G. Phelps, of New York, was called to the chair, being described as the oldest vice-president of the society. We have not before us the proceedings of the main office at Washington prior to the date of the codicil, but if just inferences may be drawn from these and other proceedings of the annual convention, it would appear that many prominent and active humanitarians, resident in the city of New York, were deeply concerned for the welfare of the parent society, which fact was, doubtless, known to the testatrix.

Hence it is that if the parent society were obliged to show that it was in a literal sense in the city of New York, we think the evidence was sufficient to warrant the testatrix's use of that expression as a matter of description of the object of her bounty; but it is not necessary to put our decision upon that ground. It is sufficient that the appellant appears as the accurately described person named in the will, and is capable of taking the bequest; and that there is, in point of fact, no question arising as to whom the testatrix intended to designate as the legatee. Any different conclusion would be to assume that the testatrix did not mean what she wrote, and to import into the codicil an intention which is not only foreign to its entire scope and particular purpose, but which even does violence to its plain reading; and this, too, for the purpose not of upholding, but of defeating the legacy. This is not construing, but destroying the will; indeed, so definite is the person of the legatee, and so perspicuous and unmistakable the gift, that the case is hardly

one which requires the court to construe the instrument in the ordinary meaning of the phrase.

The error of the learned judge at the trial seems to be that the intended beneficiary was one which must have a legal residence in the city of New York; but, in cases of mere misdescription of residence alone, the legacies do not fail where the person intended is definite and certain. (*Lefevre* v. *Lefevre*, 59 N. Y., 434; *St. Luke's Home* v. *Association for Indigent Females*, 52 id., 191.)

To this extent the judgment should be reversed, and the judgment modified so as to permit the appellant to take its share of the estate, with costs against the defendants, Lemuel B. Stanton and others, except the infant defendants.

Van Brunt, P. J., concurred; Bartlett, J., taking no part.

Judgment reversed and modified as directed in opinion.