WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—July, 1887.

JENNINGS *v.* BARRY.

*In the matter of the judicial settlement of the account of* JOSEPH G. JENNINGS, *as administrator, with the will of* SAMUEL S. BARRY, *deceased, annexed.*

The courts favor the vesting of legacies. To postpone the vesting of a residuary estate, clear evidence of an intent to produce such a result must be presented.

Words of survivorship, in a will, should, if no special intent be manifested to the contrary, be referred to the date of the death of the testator.

It is not a rule that, where legacies to two or more are *made payable*, by the will, at a future time, and there is a provision that, in case of the death of one legatee before his legacy is payable, the same shall go to the survivors,—the bequests are *contingent.*

Testator by his will, gave his estate, both real and personal, to his executors, in trust to sell and convert the same,—except his residence and furniture, of which his wife was to have the use for life,—into money, and, after paying certain general legacies, to invest the remaining proceeds for the benefit of the wife, for life, in a manner specified; further providing that, "after" the widow's death, the said premises and fur-

niture be sold, and the proceeds, together with the principal of the fund so invested, "be equally divided and one portion thereof paid" to a son, A.; one to a daughter, B.; one to a daughter, C., for life, with remainder over; one to the children of a deceased daughter, D.; and one to a grandson, E. "In case of the death of" A., B., C. or E., "before having received the portion above devised" to them, leaving issue, him, her or them surviving, the same was to be divided "among the children of the deceased, equally"; but, "in the event" of any or either of such beneficiaries "thus dying, without leaving issue them surviving," he ordered and directed that "the portion to which he or she would have been entitled be divided equally *among the survivors* of them share and share alike."

A., E. and B. died during the widow's lifetime, the last named without, and the others leaving, issue. The widow having died, and the entire estate being converted, the court was called upon to construe the will, in order to effect a final distribution.—*Held*,

1. That the remainders to A., B., C., E., and the children of D., were legacies, and vested at testator's death.

2. That the words of survivorship, italicized, referred to the period of distribution fixed by the will, viz,: the time of the death of the widow, and that C. accordingly took, alone, the portion which B. would have received had she survived.

3. That the children of D. had no right as "survivors," under the clause last construed.

Testator in his lifetime had a claim for $2,000 against E., upon which the executors recovered a judgment against the latter, which they presented as a set-off against the share of E.'s children.—

*Held*, that the set-off should be allowed.

Manice v. Manice, 43 *N. Y.*, 369—compared.

Matter of Mahan, 98 *N. Y.*, 372—distinguished.

THE decedent left a last will and testament, in and by which he gave his estate, real and personal, to his wife, Antoinette, and to Gould J. Jennings, his executors, in trust, for the purposes therein specified. They were directed to convert the personal estate into money, and sell and convey all of his real estate, except the house and lot in Yonkers where he resided, which, with the furniture therein, he gave to his wife for life. He then proceeded to make a disposition of the remainder of his property, thus: he ordered and

directed to be paid five legacies, of $1,000 each, to certain persons and classes named.   Then followed the sixth clause :

" *Sixth.*   I order and direct my said executrix and executor to invest, upon bond and mortgage, at the largest rate of interest practicable, all the rest, residue and remainder of the avails of my said estate, and pay to my wife, Antoinette, the net increase and income arising therefrom, semiannually, during her natural life, for her use and support, which, together with the bequest to her heretofore made, is to be received and accepted by her in lieu of all dower and right of dower.   After the demise of my wife, I order and direct that the said premises, known as No. ninety-nine Warburton avenue, together with the said household furniture, be sold, and the proceeds of such sale, together with the principal of the fund for her benefit invested, shall be equally divided, and one portion thereof paid to my son Robert Alexander Barry ; one portion thereof to be paid to my daughter Rebecca Shinn Ireland, wife of Henry Ireland, deceased ; one portion thereof to my daughter, Elizabeth Ann Jennings, wife of Joseph H. Jennings, for her sole and separate use during the term of her natural life, and from and immediately after her decease to be equally divided among the children of her, the said Elizabeth Ann Jennings, her surviving, share and share alike ; one portion thereof to the children of my deceased daughter, Priscilla Chandler Bowne, in equal portions ; and the remaining portion to my grandson, William Robert Hull.   In case of the death of any or either of my said children, Robert Alexander Barry,

Rebecca Shinn Ireland, Elizabeth Ann Jennings or my grandson William Robert Hull, before having received the portion above devised to them, and leaving issue him, her or them surviving, I order and direct that the same be divided among the children of the deceased, equally, share and share alike. In the event of any or either of my said children, or my grandson, thus dying without leaving issue them surviving, I order and direct that the portion, to which he or she would have been entitled, be divided equally among the survivors of them, share and share alike."

Robert A. Barry, William R. Hull and Mrs. Ireland died before the widow; all leaving issue except Mrs. Ireland. The testator had a claim of $2,000 against the grandson, Hull. The executors subsequently recovered a judgment against him for the same, which was now presented as an off-set against the share of the estate belonging to his children. The amount of the estate, including the debt against the grandson, and exclusive of the house devised to the widow for life, was about $22,000. That house, since her death, had been sold for $7,000. The executors were both dead, and Joseph G. Jennings was now the administrator, with the will annexed.

S. H. THAYER, JR., *for administrator.*

HESS & TOWNSEND, *for children of Robert A. Barry, deceased.*

J. ADRIANCE BUSH, *for Mrs. Jennings and others.*

EDWIN MORE, JR., *and* W. P. PLATT, *for general guardian of Hull minors.*

C. L. ANDRUS, *for children of Priscilla C. Browne, deceased.*

W. M. SKINNER, JR., *special guardian for Henry J. McCarter minor, grandson of Robert A. Barry, deceased.*

THE SURROGATE.—A construction of the will of the testator is involved in the accounting proceeding now pending.  It seems to be necessary to determine three questions.  These are, 1st, the period when the legacies over, after the death of the widow, vested; 2d, to what period of time did the provision as to survivors relate; 3d, can the children of Mrs. Browne be be considered as among the "survivors" provided for in the will.  These questions will be considered in their order.

The most difficult of solution is the first one.  It is chiefly important, because its decision will determine whether the amount of the judgment against Hull is, or is not, a proper subject of set-off against the share bequeathed to him, or to his issue in case of his death. On a casual examination of the numerous authorities, on the subject as to when a legacy is vested, and when contingent, there would seem to be much conflict of opinion among the courts of this country, as well as in England; but a more careful study of them largely dispels the idea, and convinces one that the apparent differences of views and rules established are due rather to the ever varying language of testamentary instruments, as affecting intention.  One of the leading cases on this subject, decided by the Court for the Correction of Errors, in this State, is that of Moore v. Lyons (25 *Wend.*, 119).  The will read: "I give and devise unto the said negro woman, Mary, my dwelling house and lot of ground, etc., to have and to hold the same unto her, the said Mary, for and during her natural life, and, *from and after her death*, I give and devise the said dwelling house

and lot of land to Susan, Jane and Betsey, three daughters of said Mary, or to *the survivors or survivor of them*, their or her heirs or assigns forever." The court held that the remainders were vested and not contingent, and that they did so actually vest at the death of the testator; and also, that survivorship should, in all cases, if there be no special intent manifested to the contrary, be referred to the period of the death of the testator. It was also held that the same rules applied to legacies. These rules were applied in the case of Weed v. Aldrich (2 *Hun*, 531).

Jarman says, if the postponement of payment appear to have reference to the situation or convenience of the estate, as, if land be devised to A. for life, remainder to B. in fee, charged with a legacy to C., payable at the death of A., the legacy will vest *instanter ;* and consequently, if C. die before the day of payment, his representatives will be entitled (2 Jarm. on Wills, [5th Am. ed.], 450). So, where a sum of stock is bequeathed to A. for life; and, *after his decease*, to trustees upon trust to sell and pay and divide the proceeds to and between C. and D., or to pay certain legacies thereout to C. and D.; as the payment or distribution is evidently deferred until the decease of A., for the purpose of giving precedence to his life interest, the ulterior legatees take a vested interest at the decease of the testator. This doctrine prevails as well in gifts to a class as to individuals (id., 458; citing many cases). A gift over, in case of the legatee's death before the period of distribution, will not generally prevent the application of this doctrine (Shrimpton v. Shrimpton, 31

*Beav.*, 425). The mere introduction, into an ulterior gift, of new words of disposition has no effect in postponing the vesting. Thus, where a testator bequeaths personalty to trustees, in trust for A. for life, adding: " and after her decease, *then I give,*" etc., these words do not postpone the gift to the posterior legatee until the decease of A., but merely show that this is the period at which it will take effect in possession (Benyon v. Maddison, 2 *B. C. C.*, 75). Shipman v. Rollins (98 *N. Y.*, 311) is cited as an authority sustaining the view that these legacies over did not vest until the death of the life tenant. It was so held in that case, because of the peculiar provisions of the will, from which it was ascertained to be the intention of the testator that they should not vest until " then." In the case of Miller v. McBlain (*id.*, 517), cited on the same point, the only question decided was that, after an estate had vested in one of several, and where it was provided that, on the death of any one, that one's estate should go to the survivors, the estate so vested could not be divested by the death of one after the period fixed for distribution. The court thought it clear that the words of survivorship related to the expiration of the life estate and the period of distribution. The will gave the widow something more than a life estate. All of the testator's estate was given to her, " *to be used and enjoyed by her, at her own discretion,* during her natural life," and then " *whatever may remain . . . .* is to be disposed of as follows." Then the testator provides that certain sums due from his children are to be added to the estate, after the death of his wife, the whole then to

be divided into twelve equal parts, "*which I hereby give and devise, absolutely and wholly,* one share to each of my children." This language, upon which the court laid much stress, and the other provisions of the will fully justified it in holding that the intention of the testator was that no part of his estate should vest in his children until the termination of the life estate. The will now being considered differs, in its essential features, from both of those last referred to.

It appears that courts favor the vesting of legacies. In regard to their vesting, a leading distinction is, that if futurity is annexed to the *substance* of the gift, the vesting is suspended, as where there is a gift to A. at the age of twenty-one years; but if it relate to the time of payment only, the legacy vests *instanter*. FOLGER, J., in Loder v. Hatfield (71 *N. Y.*, 92), in speaking of the postponement as being annexed to the *substance of the gift,* defines the phrase thus: "or as it is sometimes put, unless it be upon an event of such a nature that it is to be presumed that the testator meant to make no gift unless that event happened." That would be a violent presumption here, as the testator knew the event would certainly happen. Futurity here is not annexed to the substance of the gift. And so, if the postponement of payment appear to have reference to the situation or convenience of the estate, the legacy will vest at once.

Here the bequests to the children were of personal property. The real estate was all equitably converted into personalty at the death of the testator, except

the house and lot reserved, and that became thus con-
verted at her death.    The postponement of the sale
of that, as it was for the convenience of the estate,
would hardly be a sufficient cause, of itself, to pre-
vent a vesting of the legacies.    Numerous cases will
be found where specific property was given to trustees
to collect and apply the income to the use of a life
beneficiary, and, at the death of the life tenant, to
sell and divide the proceeds among certain legatees
in remainder, and the legacies were held to vest in
the latter on the death of the testator.    Why should
there be any distinction made, in this respect, between
real estate and government bonds ?    If the testator
had directed the trustees to invest in stocks and
bonds, and then ordered them sold, at the death of
his wife, the legacies would have vested at once.
Can it justly make any difference that the money
was to be raised by the sale, then, of land, instead ?
In both cases, the prices they will bring at a future
period, would be uncertain.    The question of vesting,
or not vesting does not depend upon the ascertaining
of an exact sum.    In this case, the amount of the per-
sonal estate at the death of the testator could have been
approximately ascertained, and, but for the postpone-
ment of the sale of one parcel of the real estate, there
could have been no doubt, aside from the survivorship
provision, that the legacies to the children and grand-
child, vested *instanter*.    Indeed, a will may be made
in such terms that a portion of a bequest shall vest at
once, and the other portion be contingent.    The case
of Dominick v. Moore (2 *Bradf.*, 201), though not

strictly in point, was very similar to this in some of its features.

The testator provides that, at the death of the widow, his estate shall be equally divided, and five portions paid as therein directed, and then further provides that in case of the death of either "before having received the portion *above devised to them*," leaving issue, etc. To my mind this language imports a present gift, and brings the case within the principle established in the case of Manice v. Manice (43 *N. Y.*, 369). It was also there held that the rule applied to a mixed fund of realty and personalty, citing Martin v. Martin (*L. R.*, 2 *Eq. Cas.*, 404). Besides, this is the residuary estate which is disposed of by the clause of the will under consideration, and to postpone its vesting, a clear intention must be indicated (2 Jarm., 469, 472). The case of Manice v. Manice (*supra*) was essentially like this. Shares of proceeds of real and personal estate were given, at the death of the life tenant, to children and their issue, and if no issue, to survivors. The court, on this state of facts, says: "It may be laid down, as a general rule, that where, by a will, shares or interests in real or personal estate, to be ascertained by a division, are given, or where real estate is directed to be sold, and the proceeds to be divided, the estate or interest of the devisee or legatee, in the property to be divided or converted, is a vested interest before the conversion or division, and that limitations over, to take effect in case of the death of those first designated, prior to the division or sale, must be held to refer to the time appointed for the

division or sale." This seems to be as nearly in point as any case can well be. None can be expected to be precisely so, because of the varying provisions and phraseology of wills.

It has been said that, where legacies are payable at a future time, and there is a provision that, in case of the death of one legatee before it is payable, his legacy shall go to the survivors, the legacy does not vest. The above case is an authority to the contrary, and many more may be found in 2 Jarm. (5th ed.), 409, *n.* That was a ruling of the ecclesiastical courts, which has met but little favor in England or in this country. No sufficient reason is apparent for such a rule.

If it should be held that the legacies were contingent, then it would follow that it was the intention of the testator, if his grandson, Hull, died before the death of his widow, to abandon the claim of $2,000 which he had against him, and so, in effect, give to his issue that amount, in addition to their equal share of the residuum of his estate. He could not be said to have contemplated, or intended, such a result.

The death of the wife was not a contingency; it was a certainty. Had the fact of the postponement of the sale of the house and lot been the only element considered in the case of Shipman v. Rollins (*supra*), it is believed a different conclusion would have been there reached. The question is not free from doubt, but here the legacies are considered as having vested at the death of the testator, subject to being divested on the death of any legatee without issue, before the period fixed for division, and the

time of possession, alone, postponed. If this view be correct, as it is believed to be, it follows that the judgment against William R. Hull, the deceased grandson, may be applied in payment of the share to which his issue are entitled.

As to the *second* question, it may be stated that the intention of the testator is, in every instance, to be ascertained from the language of the will, as is abundantly exemplified in the cases above considered. Of course, this language will determine his intention as to the period of time to which the term " survivor," is to be referred. It is well settled, as in the case of Moore v. Lyons, that survivorship should, in all cases, if there be no intent manifested to the contrary, be referred to the time of the death of the testator. Such special intent to the contrary was here manifested, by the testator. He directs his executors to sell and convert into money all his personal and real estate, except his residence and the furniture therein, and to invest the same for the benefit of his wife for life, save some few general legacies ; and she was to have the use of the homestead and furniture also, during her life. After the death of his wife, he directs the homestead and furniture to be sold, and the proceeds thereof, together with the principal of the fund producing her income, to be equally divided into five equal portions, and paid over as directed by the will. In case of the death of certain named children and grandson, *before having received* the portion given, leaving issue, such issue to take the share of the parent. " In the event of any or either of my said children or my grandson *thus dying* without leaving

issue them surviving, I order and direct that the portion to which be or she would have been entitled, be divided equally among the survivors of them, share and share alike." This language clearly shows that it was the intention of the testator that the word "survivors" shall relate to the period of distribution fixed by the will, to wit, the death of the widow. That was the time assigned for each one to come into possession of his or her share. The case of Mahan (98 *N. Y.*, 372), cited as an authority on this point by the special guardian, and the cases there referred to, are therefore, not in point. All having died before the death of the widow, except Mrs. Jennings, she will, as sole survivor, take the share of Rebecca S. Ireland, who died, anterior to the death of the widow, leaving no issue.

It seems equally clear, on the *third* question, that the children of the deceased daughter, Mrs. Bowne, have no interest in the estate, beyond the legacy of $1,000 bequeathed to them by the fifth clause of the will, and their one fifth of the residue. They are not named or referred to in the *sixth* clause in any way to entitle them to take as survivors. In so far as they are concerned, the case of Guernsey v. Guernsey (36 *N. Y.*, 267) is a conclusive authority, if any were needed, against the claim they advance to be classed among the survivors of the legatee who died without issue. The will declares that, in case of the death of any or either of testator's said children, Robert Alexander Barry, Rebecca Shinn Ireland, Elizabeth Ann Jennings or his grandson, William Robert Hall, before having received the portion bequeathed to them, and

leaving issue, the share of the parent, so dying, to go to the issue.   In case of there being no issue of those just named who might *thus* die, namely, before having received his or her share, the survivors of those named, and none . others, were to take the share. Hence, the children of Mrs. Bowne have no interest in the share allotted to Mrs. Ireland.

Decree accordingly.