SAMUEL RIKER, JR., as Trustee in Bankruptcy of the Estate of EDWARD E. GWYNNE, Appellant, *v.* HELEN S. GWYNNE, as Administratrix of the Estate of EDWARD E. GWYNNE, Deceased, et al., Respondents.

Will — provisions creating life estates, with remainders over to certain issue of life tenants, construed, and held, that vesting of estate was not postponed until the death of the life tenant.

Unless the facts are conceded, or are so incontrovertibly established tha they cannot be changed upon a new trial, the Appellate Division has no power to grant judgment absolute.

Testatrix left a life estate in her real estate to her husband; and upon his death or remarriage to her two brothers in fee, share and share alike; providing also that if either brother should die before the death or remarriage of her husband "not leaving lawful issue him surviving, then the survivor of them shall have and take the share, * * * which the deceased if living, would have taken." The will continues further: "But if the deceased shall leave lawful issue, then I give, devise and bequeath, to such issue, their parents' share in said real and personal estate." One of the brothers and his son and only child died, the latter leaving three children him surviving. The life tenant is still living and unmarried. *Held*, that the vesting of the trust estate was not postponed until the death of the life tenant, but that upon the death of the brother of the testatrix his son took an absolute vested remainder not subject to be divested by his death before that of the life tenant.
*Riker* v. *Gwynne*, 139 App. Div. 423, modified.

(Argued February 13, 1911; decided February 28, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 21, 1910, upon an order reversing upon the facts and law a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and directing a dismissal of the complaint.

This is an action to set aside a conveyance from Edward E. Gwynne, deceased, to his mother, Louise Gwynne, also deceased. The contest is between the plaintiff, as trustee in bankruptcy, and certain infant defendants. The question whether the plaintiff is entitled as such trustee to recover for the benefit of the creditors of Edward E. Gwynne, the property thus conveyed, or whether it has passed to the children of the bankrupt, depends upon the construction of the fourth and fifth paragraphs of the last will and testament of Edith O. Gill, deceased, who was an aunt of the bankrupt.

Under the will of Edith O. Gill, the bankrupt, Edward E. Gwynne, acquired a one-half interest in remainder in certain premises located on East 86th street, New York city. This interest was subject to a life estate in William Fearing Gill, the husband of the testatrix, and he is still living. The bankrupt, Edward E. Gwynne, died in 1904. Prior to his death and on February 8th, 1901, he deeded his interest in the premises to his mother, Louise Gwynne, who has since died. After this transfer, and in 1902, the grantor, Edward E. Gwynne, was duly declared a bankrupt in proceedings instituted by himself, and the plaintiff was appointed the trustee of his estate. This action was commenced in 1902 by the plaintiff as such trustee, to set aside the transfer of said property from the bankrupt to his mother as in fraud of creditors of the bankrupt. The testatrix gave to her husband, William Fearing Gill, an estate for life or until his remarriage, in the premises on 86th street. Upon his death or remarriage it was to go to her two brothers, David Eli Gwynne (the father of the bankrupt) and Abraham Evan Gwynne. The fourth paragraph of the will is as follows:

" On the decease or the remarriage of my said husband I

give and devise all and singular the real estate, above devised to my husband for and during his natural life or until he shall remarry, to my brothers David Eli Gwynne and Abraham Evan Gwynne in fee share and share alike.

"I also give and bequeath to my said brothers to be equally divided between them, all my personal property from and after the decease or remarriage of my husband. Should either of my said brothers die before me, or before the death or remarriage of my said husband not leaving lawful issue him surviving then the survivor of them shall have and take the share of the said real and personal estate, which the deceased, if living, would have taken. But if the deceased shall leave lawful issue, then I give, devise and bequeath to such issue their parents' share in said real and personal estate." The fifth clause of the will directs the executors "from and after the death of my husband or his remarriage, to deliver over all and singular said real estate to my brothers David Eli Gwynne and Abraham Evan Gwynne or to such other person or persons as shall be entitled to same pursuant to the terms and conditions of this will, and to make division of the principal of my personal estate."

David Eli Gwynne died in January, 1900, leaving him surviving Louise Gwynne, his widow, and Edward E. Gwynne, the bankrupt, his only child. The bankrupt died in 1904, leaving him surviving three children, the infant defendants Alice, Edward C. and Erskine Gwynne, under the age of fourteen years. On behalf of these infant defendants it is claimed that their father, the bankrupt, acquired, not an absolute vested interest in remainder upon the death of his father David Eli Gwynne, but an interest which was contingent upon his surviving the life tenant, William Fearing Gill; and that upon the bankrupt's pre-decease of the life tenant the interest of the former was divested in favor of his children, these infant defendants; that the bankrupt's grantee acquired no title, and, therefore, the trustee in bankruptcy cannot recover. This contention has been upheld by the Appellate Division in the decision from which this appeal is taken.

The action has been twice tried.  Upon the first trial the complaint was dismissed upon the ground that the transfer was not in fraud of creditors.  Upon appeal to the Appellate Division that judgment was reversed and a new trial granted, it being held that the evidence was sufficient to establish fraud in the transfer.  (129 App. Div. 112.)  The construction of the will of Edith O. Gill does not seem to have been expressly passed upon in either of those decisions.  On the second trial judgment was rendered in favor of the plaintiff, the trial court having found that the transfer was made to hinder, delay and defraud creditors of the said Edward E. Gwynne, and that his mother, the grantee, took the property with knowledge of such fact.  It further held that the bankrupt, Edward E. Gwynne, took an absolute vested interest in remainder, not subject to be divested.  A second appeal to the Appellate Division resulted in an order of reversal upon the facts and the law, but the opinions indicate that the decision was based solely upon the ground that the interest in the property which the bankrupt acquired under the terms of the will of said Edith O. Gill, deceased, became divested upon his death before that of the life tenant, and, therefore, the plaintiff, as his trustee, could acquire no title through him, whether the transfer was fraudulent or otherwise.  The complaint was accordingly dismissed and no new trial awarded.  From this latter decision the plaintiff has appealed to this court.

*Henry Necarsulmer* and *Max J. Kohler* for appellant. Edward Gwynne took an absolute vested remainder under Mrs. Gill's will, and not one subject to be divested by his death before the life tenant.  (Schouler on Wills, 269, 270; *Benson* v. *Corbin*, 145 N. Y. 351; *Nelson* v. *Russell*, 135 N. Y. 137; *Matter of Seaman*, 147 N. Y. 69; *Corse* v. *Chapman*, 153 N. Y. 466; *Arnot* v. *Arnot*, 75 App. Div. 230; *Dore* v. *Torr*, 128 Miss. 38; *Connelly* v. *O'Brien*, 166 N. Y. 406; *Roosa* v. *Harrington*, 171 N. Y. 341; *Davidson* v. *Jones*, 112 App. Div. 254; *Matter of Tompkins*, 154 N. Y. 643.)  The direction for dismissal of the complaint, which

direction was coupled by the Appellate Division with the reversal of the former judgment for plaintiff, was erroneous. (*Duclos* v. *Kelly*, 197 N. Y. 76; *Ross* v. *Caywood*, 162 N. Y. 259; *Putnam* v. *L. S. D. Co.*, 191 N. Y. 166; *Van Buren* v. *Wotherspoon*, 164 N. Y. 368; *Lopez* v. *Campbell*, 163 N. Y. 340; *Mansfield* v. *Mayor, etc., of N. Y.*, 165 N. Y. 208.)

*C. R. Waterbury* for Helen S. Gwynne et al., respondents. Edward E. Gwynne, the grantor, upon his death became divested of all right, title or interest in or to the premises in question, and the remainder in question vested in said infants, subject to be divested upon their death before the life tenant. (*Drake* v. *Drake*, 56 Hun, 590; 134 N. Y. 220; *Soper* v. *Brown*, 136 N. Y. 244; *Chatwell* v. *Schreiner*, 148 N. Y. 683; *More* v. *Littel*, 41 N. Y. 66; *Dougherty* v. *Thompson*, 167 N. Y. 472; *Baer* v. *Hendrick*, 147 N. Y. 348; *Hebberd* v. *Lese*, 107 App. Div. 425; *Gilman* v. *Guaranty Trust Co.*, 111 App. Div. 656.)

*Dallas Flannagan* for Franklin Steele, as trustee under the will of Louise Gwynne, deceased, respondent.

WERNER, J. The Appellate Division, although reversing upon the facts and law, granted judgment absolute in favor of the defendants. It is well settled by the decisions of this court that unless the facts are conceded, or are so incontrovertibly established that they cannot be changed upon a new trial, the Appellate Division has no power to grant judgment absolute. (*Duclos* v. *Kelley*, 197 N. Y. 76, and cases cited.) We cannot say that the evidence relating to the issue of fraud is of that character. The reversal upon the facts should, therefore, have been coupled with a direction for a new trial. Although the reversal was upon the facts as well as the law, the opinions of the Appellate Division proceeded, as we have stated, upon the theory that the findings of the trial court upon the issue of fraud were not to be disturbed. The only question which appears to have been actually passed upon by the learned Appellate Division was the construction of the

will of Edith O. Gill, deceased. That is, of course, purely a question of law, and since there must be a new trial of this action in any event, that is the only question we shall decide.

Under the provisions of the will, it is to be observed, the testatrix left a life estate to her husband, William Fearing Gill, in all her real estate. She then provided that upon his death or remarriage, "I give, and devise" such real estate "to my brothers David Eli Gwynne and Abraham Evan Gwynne in fee, share and share alike." Had the will stopped there, the brothers would have taken absolute estates in fee. But the will goes on to provide that if either brother should die before the death or remarriage of the husband "not leaving lawful issue him surviving, then the survivor of them shall have and take the share. * * * which the deceased if living would have taken." Here, again, is a clear and definite disposition of the whole estate to the survivor of the two brothers. The will continues further, however, and provides: "*But if the deceased shall leave lawful issue, then I give, devise and bequeath to such issue their parents share in said real and personal estate.*" The testatrix further directed her executors, upon the death or remarriage of her husband, to deliver over said real estate to her brothers or to such other person or persons as shall be entitled to the same pursuant to the terms and conditions of her will, "and to make division of the principal of my personal estate."

The testatrix died in May, 1899. One of her brothers, David Eli Gwynne, who was the father of the bankrupt, died in January, 1900. The bankrupt was, as we have stated, his only child, and the bankrupt died in 1904, leaving him surviving the three children who are the infant defendants. The life tenant is still living and unmarried. The narrow question to be decided is whether the remainder in the share of the real estate, which David Eli Gwynne would have taken had he survived the life tenant, passed absolutely to the bankrupt upon the death of his father, David Eli Gwynne, or whether it was again divested in favor of the bankrupt's children by the death of the bankrupt in the lifetime of the

life tenant. To state it more briefly, the question is whether the absolute vesting of the estate is to be determined as of the time of the death of David Eli Gwynne, or whether it was postponed until the death of the life tenant. As bearing upon that question, it is obvious that the testatrix intended that her two brothers should each take a vested remainder in one-half of her real estate, subject to be divested in case of the death of either before the life tenant; and in the event of the death of either brother before the death of the life tenant, the " issue " of the deceased brother were to take the share which he would have taken had he survived the life tenant. The term " issue " means descendants and includes grandchildren as well as children. But there are many wills in which the term is used in a much narrower sense. The question here is whether the testatrix looked so far into the future as to contemplate successive deaths and divestings before reaching the " issue " referred to in the will, or whether she had in mind the " issue " of her brother, who should be living at his death. The question is, what was the intention of the testatrix? That is to be ascertained from the language which she used. As was said by Judge O'BRIEN in *Johnson* v. *Brasington* (156 N. Y. 181, 185): " When we speak in such cases of the intention of the testator we do not always refer to some intention or purpose that he actually had in mind. We mean that when he has expressed himself in ambiguous or doubtful language that the law will impute to his words such a meaning as, under all the circumstances, will conform to his probable intention and be most agreeable to reason and justice." The general rule is that the law favors the vesting of devises or bequests as soon as possible after the death of the testator. (*Bowditch* v. *Ayrault*, 138 N. Y. 222, 228; *Connelly* v. *O'Brien*, 166 id. 406.) This rule is not absolute and gives way to the expressed intention of a testator to the contrary. In a case where the only words of gift in a will are contained in a direction to pay or divide at a future time, the remainder may be construed to be contingent upon survivorship and not vested; or if it vests at all

before the date of distribution, it may be subject to be divested before that time in favor of a person presumptively entitled to share in the distribution. (*Rudd* v. *Cornell*, 171 N. Y. 114; *Matter of Baer*, 147 id. 348.) It is to be noted that the will before us contains language importing an absolute gift. The words are: " But if the deceased (brother) shall leave lawful issue, *then I give and devise and bequeath* to such issue their parents share in said real and personal property." The only words in the will which tend to support the contention that the testatrix intended the death of the life tenant to mark the point of time at which the ultimate beneficiaries were to be ascertained are the following: " On the decease or remarriage of my said husband I give and devise * * * to my brothers" the property here in question "in fee, share and share alike." But these words do not prevent the vesting of the remainders. They merely postpone the enjoyment thereof until the death of the life tenant. (*Matter of Seaman*, 147 N. Y. 69, 74; *Nelson* v. *Russell*, 135 id. 137.) The argument presented on behalf of the infant defendants necessarily leads to the conclusion that if the bankrupt had died before the life tenant, leaving no issue him surviving, his share would not have passed to his heirs at law, but as to this portion of her estate the testatrix would have died intestate. That is a construction which we should avoid if possible. While the use of the word "issue" taken by itself might be held to mean descendants and thus include the infant defendants, that is not of itself sufficient to prevent the vesting of the remainder in the bankrupt, who also answered such description. We think it more consonant with the testamentary intent, as disclosed by the whole context of the will, to hold that upon the death of David Eli Gwynne his "issue," the bankrupt, became vested with his share. Under the rule that the law favors vested rather than contingent remainders, it should be held that the bankrupt took an absolute vested remainder upon the death of his father, not subject to be divested by his death before that of the life tenant. There is nothing in the will to conflict with that rule of construc-

tion.   We hold, therefore, that the bankrupt had an absolute vested remainder in the property, the transfer of which the plaintiff, as trustee in bankruptcy, had the right to have set aside for the benefit of the bankrupt's creditors if it is shown to be fraudulent.   We cannot give judgment absolute in the plaintiff's favor, because the reversal was upon the law and the facts.   We can only modify the judgment appealed from by granting a new trial.

The judgment appealed from should be modified by granting a new trial, and as so modified affirmed, with costs to abide the event.

CULLEN, Ch. J., GRAY, VANN, HISCOCK and COLLIN, JJ., concur ; HAIGHT, J., absent.

Judgment accordingly.