Surrogate's Court, Madison, County, May, 1919.    [Vol. 107.

Matter of the Judicial Settlement of the Accounts of
ANTHONY B. MUNROE, as Administrator with the
Will Annexed of the Estate of CHRISTINA COWARDEN,
Deceased.

(Surrogate's Court, Madison County, May, 1919.)

**Wills — life estates — vested remainders — substitutionary legatee.**

> After a gift of the use and income of the entire estate to one
> of her daughters for life, with the right in case of illness to
> draw upon the principal for support when deemed necessary
> by the executor, who was given full power to convey real estate,
> the remainder at the death of the daughter was devised and
> bequeathed to the son and another daughter of the testatrix in
> equal shares. In case the life tenant should survive the remain-
> dermen, his or her portion was given to his or her heirs or in
> the case of the death of either, leaving no heir, then to their
> nearest relative. Both remaindermen survived the testatrix but
> predeceased the life tenant. *Held,* that immediately upon the
> death of the son, his surviving daughter became vested, as sub-
> stitutionary legatee, with an undivided one-half interest in the
> estate of the testatrix herein, subject to the interest of the life
> tenant, now deceased.

PROCEEDING upon the judicial settlement of the
accounts of an administrator with the will annexed.

E. Leland Hunt, for administrator c. t. a.

Joseph Beal, administrator c. t. a. of the will of
Anthony Cowarden, deceased, and executor of the will
of Kittie Cowarden, deceased, in person.

Thomas A. Devereux, residuary legatee under the
will of Kittie Cowarden, deceased, in person.

Royal D. Woolsey, special guardian for an
incompetent, in person.

SENN, S.  Christina Cowarden, the testatrix, died in the year 1892, leaving a last will and testament dated June 24, 1881, by which she gave to her daughter, Rebecca Cowarden, the use and income of her entire estate as long as she should live, with the right, in case of illness, to draw upon the principal of the estate for her support when the executor deemed it necessary. The executor is given full power to sell and convey real estate.

The will then provides as follows: "After the decease of my said daughter, Rebecca Cowarden, I will, devise and bequeath all that remains of my said estate both personal and real to my son Anthony Cowarden and to my daughter Mary Ann Dixon to be divided equally between them, share and share alike; and if my said daughter Rebecca shall survive said son Anthony or said daughter Mary Ann Dixon, then and in that case his or her portion shall go to his or her heirs or if either die leaving no heir or heirs then to their nearest relative."

The will was drawn by Thompson E. Barnes, who was not a lawyer.  Both Anthony Cowarden and Mary Ann Dixon, mentioned in the will, survived the testatrix but died before the decease of Rebecca Cowarden, which occurred in the year 1918.  Anthony Cowarden left one daughter, Kittie Cowarden, his only child or descendant, who died before the death of Rebecca Cowarden, leaving a will which is now in force and under which Thomas A. Devereux is the residuary legatee.

Mary Ann Dixon left children and descendants who now survive and therefore there is no question of their right to inherit under the plain terms of the will.

The principal question arising as to the construction of the will is whether on the decease of Anthony Cowarden the legacy of an undivided one-half of the

Surrogate's Court, Madison County, May, 1919.     [Vol. 107.

estate vested in Kittie Cowarden, subject only to the life interest therein given to Rebecca Cowarden. If this is answered in the affirmative, there is no other question, for it would then be immaterial as to who was meant by the words " nearest relative."

The first thing to be determined is the intent of the testatrix. That intent must, if possible, control and be given effect, unless something was intended or attempted which is contrary to law. The courts have from time to time laid down certain rules for the interpretation of wills, but those rules are not, like rules of property, hard and fast, invariable rules, to be applied alike in all cases. They are subordinate to the requirement that the intention of the testator should be sought and given effect where that may lawfully be done and if that intent can be plainly read from the will it must control regardless of all rules that have been formulated for the construction of wills. In other words, there is no inflexible rule which must be uniformly applied whenever a certain form of words is used, if from the language employed or from the general scheme of the will or considering the bearing of each part on the other, the manifest intent of the testator can be clearly deduced or understood. See *Fulton Trust Co.* v. *Phillips,* 218 N. Y. 573.

The intent must be read from the will itself, unless by reason of inconsistencies, contradictions or ambiguities this cannot be done. If any provision, otherwise obscure, can be clarified by comparison with the other provisions, this may be done so far as the various parts have any connection or bearing, one to the other. In short, all the parts of the will are to be taken together. The duty of the court as stated in *Herzog* v. *Title Guarantee & Trust Co.,* 177 N. Y. 92, is to interpret, not to construct; to construe the will, not to make a new one. When the intent has been found, it

is for the court to determine whether such intended provision is valid or otherwise.

Among the rules for determining whether a remainder estate is vested are the following: Where there is a person in being who would have an immediate right of possession on the determination of all the intermediate or precedent estates, the remainder is vested. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain. Real Prop. Law, § 40; *Moore* v. *Littel,* 41 N. Y. 66, 80; *Fulton Trust Co.* v. *Phillips, supra.*

If futurity is annexed to the substance of the gift and a contrary intention is not manifested in the will, the vesting is suspended, but if the gift is absolute and the time for enjoyment only is postponed, the gift is not suspended but vests at once. *Fulton Trust Co.* v. *Phillips, supra.*

The law favors the vesting of estates and the courts will always give such a construction to a will as will tend to best provide for descendants or posterity and will prevent the disinheritance of remaindermen who may happen to die before the determination of the precedent estate. *Byrnes* v. *Stilwell,* 103 N. Y. 460; *Matter of Russell,* 168 id. 175; *Lewis* v. *Howe,* 174 id. 346, and many other cases.

Adverbs of time, such as " when," " then," " after," " from and after," etc., in a devise of a remainder limited upon a life estate, are construed to relate merely to the time of enjoyment of the estate and not to the time of vesting in interest. *Connelly* v. *O'Brien,* 166 N. Y. 408.

These rules have been held by the courts so many times and are so well settled that they may be regarded as elementary law. Applying them to the will of Christina Cowarden in question, it seems to me that the legacy to Anthony Cowarden was vested on the

decease of testatrix, subject to be divested in the event of his decease before that of his sister Rebecca, or by the use of the entire corpus of the estate as provided by the will. Looking at the general scheme and plan of the will it is quite patent that testatrix had first in mind her own lineal descendants, her chief care being to provide for her daughter Rebecca and that subject to this she wanted her property to go equally to her son Anthony and her daughter Mary Ann, and in case of their decease before that of Rebecca, to their respective children or descendants, if any should survive them. Otherwise, to their nearest relatives.

It is conceded that the word " heirs " as generally used refers to descendants, especially when the language of the will seems to so intend. *Johnson* v. *Brasington,* 156 N. Y. 181.

While in the legal sense the word " heirs " includes relatives, and would include collateral relatives if there were no lineal descendants, still it is evident that testatrix had in mind two classes of persons and that by " heirs " she meant children or descendants and by " relatives " she meant collateral relatives. If then, the legacy to Anthony Cowarden was vested, it is equally plain to me that on the happening of the event on which his legacy was divested, his daughter Kittie who survived him became vested as substitutionary legatee in place and stead of Anthony Cowarden, subject only to being divested by the entire estate being used during Rebecca's life. She then became a person who would have been entitled to immediate possession of an undivided one-half of the real and personal property of decedent on the determination of the life interest of Rebecca.

At any rate the case of *Riker* v. *Gwynne,* 201 N. Y. 143, seems to be conclusive upon the proposition. In that case the testatrix gave to her husband an estate

in certain real property for life or until his remarriage. On his decease or remarriage the real and personal estate was given equally to the two brothers of testatrix. The will then proceeded as follows: "Should either of my said brothers die before me, or before the death or remarriage of my said husband not leaving lawful issue him surviving then the survivor of them shall have and take the share * * * which the deceased, if living, would have taken. But if the deceased shall leave lawful issue, then I give, devise and bequeath to such issue their parents' share in said real and personal estate."

One of the brothers of testatrix mentioned in this will, David Eli Gwynne, died before the decease of the husband beneficiary, leaving Edward E. Gwynne, his only child. The latter died during the lifetime of the husband beneficiary, leaving three children. Before his decease said Edward E. Gwynne became bankrupt and had conveyed some of the property devised in the will as above stated. An action was brought by the trustee in bankruptcy to set aside the conveyance from Edward to his mother and in that action it was claimed in behalf of the children of Edward that their father had acquired on the death of David Eli Gwynne, not an absolute vested interest in remainder but an interest which was contingent on his surviving the husband beneficiary or life tenant. The Court of Appeals held that the remainder interest of the bankrupt was vested and that therefore the trustee in bankruptcy had a right to maintain his action for the benefit of Edward E. Gwynne's creditors to set aside the conveyance from the bankrupt to his mother.

Counsel for the administrator-trustee contends that there is a material distinction between the *Gwynne* case and the one at bar because under the Cowarden will the executor, who is also given full power to sell

Surrogate's Court, Madison County, May, 1919.    [Vol. 107.

and convey real property, is authorized and requested, in case of sickness of Rebecca and the income is not sufficient for her support, to draw from the principal of the estate as in his judgment he may think necessary.   I do not think that the fact that the corpus of the estate was under certain conditions permitted to be used, or that the discretion in that regard was given to the executor, can be said to annex futurity to the substance of the gift so as to make the same conditional.   Futurity is annexed to the substance of a gift, as I understand it, when something is to be done in the future to bring the gift into being or completion. Such was the case in *Shipman* v. *Rollins,* 98 N. Y. 327, where the testator's widow was given the use of certain real estate for life and in addition the executors were directed to sell enough real estate to produce an annual income of $1,500 to be paid the widow; also to sell real estate where the proceeds were required for taxes, repairs or other exigencies and after the death of the widow the executors were to sell what remained of the real estate and add the proceeds to the amount invested to produce the widow's annuity of $1,500 and from the fund so created to pay the widow's funeral expenses and any debts she might have contracted and any mortgages outstanding against the estate, and the balance was then to be divided into eight shares and divided among certain beneficiaries named.   On account of the uncertainty of the property that would finally pass to the remaindermen, and for other reasons which alone would have sustained the holding, the remainders were held not to have vested until after the decease of the life beneficiary.   There was so much to be done by the executors that the case came very plainly within the purview and reason of the rule sometimes referred to as the " divide and pay over " rule.   But a much more

cogent reason for the holding in that case was that some of the remaindermen were at the time of testator's decease legally incapable of taking a devise, on account of not being incorporated and so known to testator who therefore must have contemplated their future incorporation and thus a future vesting of their legacies.

That legacies may vest subject to being divested is held in many cases. *Flanagan* v. *Staples,* 28 App. Div. 319, is directly in point. That was a case where testator gave his property in trust to executors to pay the income to the widow during her life, with power to resort to the principal in case of need, for her support. After the widow's decease the whole estate, or what remained, was given to testator's children in equal shares, but in the event of the death of any of said children leaving issue him or her surviving, such issue shall take the share or portion of the estate which the parent would have taken if living. Held, that on testator's decease his children took vested interests subject to being divested by their decease before that of the widow and that the interposition of a trust term did not affect the vesting in interest.

Even the existence of an unexecuted power of appointment does not prevent vesting, although subject to being divested by its exercise. So held in *Crackenthorpe* v. *Sickles,* 156 App. Div. 753; citing *Root* v. *Stuyvesant,* 18 Wend. 257, and *Matter of Haggerty,* 128 App. Div. 479, and Real Prop. Law, § 41, which was enacted, as stated in a note by the revisers, to settle, in harmony with the weight of authority, a question more or less in dispute.

It is true, as suggested, that the testatrix probably did not intend that Mr. Devereux should receive any part of her estate. But this is not a consequence which ordinary human foresight could have antici-

Surrogate's Court, Madison County, May, 1919. [Vol. 107.

pated. If, as I believe, testatrix intended that in case of the decease of her son Anthony, before that of her daughter Rebecca, then Kittie Cowarden, testatrix's granddaughter (Anthony's only child), should if she survived her father, inherit this interest, then said Kittie Cowarden did as a necessary consequence become vested with this interest immediately on the death of her father. The fact that Kittie made a disposition of her property which testatrix might not have approved does not affect the proposition of vesting. The relation of unforeseen consequences of a will to the question of vesting is pretty thoroughly discussed in *Johnson* v. *Brasington,* 156 N. Y. 185, *supra.*

I therefore hold that Kittie Cowarden, on the decease of Anthony Cowarden, became vested, as sub- stitutionary legatee, with an undivided one-half interest in the estate of Christina Cowarden, deceased, subject to the life interest of Rebecca Cowarden, now deceased, and therefore that her estate is now entitled to receive such interest.

Decreed accordingly.