GUARANTY TRUST COMPANY OF NEW YORK, Individually and as Trustee under a Certain Deed of Trust Made by ANGIER B. DUKE, Dated the 28th day of July, 1919, Plaintiff, *v.* E. BAYARD HALSTEAD and Others, as Executors, etc., of ANGIER B. DUKE, Deceased, and Others, Defendants.

Supreme Court, New York Special Term, May 9, 1925.

Wills — construction — action by trustee for settlement of account and for construction of trust deed — direction in trust deed that surplus income in excess of needs of beneficiaries be paid to grantor — in event of grantor's death before termination of trust, said surplus was to be paid to those entitled to share under grantor's will — will directed appraisal of all grantor's property at death and distribution to designated legatees in four equal parts as residuary estate — reversionary right to surplus became part of residuary estate under terms of will — appraisal of surplus at cash value does not create unlawful accumulation of income.

A reversionary right to surplus income arising from provisions of a deed of trust, set up by the testator, prior to the execution of his will, by which he directed that the surplus income in excess of the needs of the beneficiaries be paid to

himself, and in the event of his death before the termination of the trust to those entitled to share by virtue of his will, should be credited to testator's residuary estate under a clause in said will directing his executors to appraise, for the purpose of division among his residuary legatees " all rights, powers and interests in, over and concerning property of every kind " which said testator possessed at his death, and as so inventoried to be divided and distributed as his residuary estate to the designated legatees in four equal parts.

The direction in said will that the surplus income be appraised at its cash value does not create an unlawful accumulation of income, since such appraisal was made necessary for transfer tax purposes and to enable the executors to divide the residuary estate into four equal parts for the purpose of distribution under the will.

ACTION by trustee under deed of trust for judicial settlement of his account as trustee and for a construction of the trust.

*Jackson, Fuller, Nash & Brophy,* for the plaintiff.

*Forrest Hyde* [*William R. Perkins, Forrest Hyde* and *Philip M. Payne* of counsel], for the defendants E. Bayard Halstead and others.

*Geller, Rolston & Blanc* [*C. Alexander Capron* and *J. Ramsey Clayton* of counsel], for the defendant The Farmers' Loan and Trust Company, as trustee.

*Caldwell & Banister* [*Charles Caldwell* of counsel], for the defendants Benjamin N. Duke and others.

*Beekman, Bogue, Clark & Griscom* [*William L. Bainton* of counsel], for the defendant Cordelia Biddle Robertson, as guardian *ad litem* for Angier B. Duke, Jr., and another.

LEVY, J.:

This is an action by the plaintiff for a judicial settlement of its account as trustee and for a construction of the trust indenture dated July 28, 1919, made by Angier B. Duke, now deceased. The grantor, in order to make suitable provision for the support of his wife, Cordelia Duke, and their two infant children, created this trust by depositing certain securities with the Guaranty Trust Company, the net income from which was to be annually paid as follows: $20,000 to his wife — to be reduced to $10,000 in the event of her remarriage — and $5,000 to each of his children. Any income remaining was to be paid to the grantor in quarterly installments, or in case he died before the termination of this trust, to those who might be entitled to share by virtue of his will; and in the event he left no such will, to his next of kin under the Statute of Distribution. The trust was to continue for the life of the grantor and his wife, and after its termination the corpus was to go to his children or their descendants, and in default of such persons sur-

viving, to his next of kin entitled to participate under the statute then in force.

After the creation of the said trust the grantor made a will, by the terms of which he directed his executors to make " an inventory and appraisal of all the property (which shall include all rights, powers and interests in, over and concerning property of every kind and wheresoever situated) which I may own at my death." The property so inventoried, after the payment of debts, expenses and taxes, and particular legacies, was denominated by the testator as his residuary estate, to be divided as follows: (a) One-quarter in value to his mother for life, remainder to his sister, and if the latter should die without issue, to his heirs, in accordance with the Statute of Descent; (b) one-quarter to his sister, with like limitation should she die without issue; (c) one-quarter to each of his two sons in trust for them, remainder to their descendants, said trusts to be measured by the lives of these two children. Full discretion was given to the executors as to the kind of property to be allotted by them in the payment of any legacy or in its allocation to any trust thus created under the will. The testator died on September 3, 1923, and the question now arises as to the ownership of the surplus income under the trust indenture of 1919, the claim being made by the executors that it belongs to the residuary estate. This is contested by the guardian *ad litem* of the two infant children, who contends that the testator died intestate as to this part of his estate, and even if it should be held otherwise the effect of so interpreting the will would be to create an unlawful accumulation as to some of the beneficiaries of the residuary estate. In either event the guardian urges that the surplus income belongs to the infant children as the next of kin, under the express provision of the trust indenture.

While much legal learning has been evidenced by the labors of counsel, the question to be resolved does not appear to be quite so complex. In a situation of this character we must endeavor to carry out the intention of the grantor, who is also the testator, as expressed in clear and unambiguous language. (*Riker* v. *Gwynne*, 201 N. Y. 143, 149.) When he created the trust under the indenture he provided two kinds of reversion, one as to the surplus income and the other as to the corpus in the event of the death of his children without issue. As to the latter, the trust instrument clearly provides that such corpus is to go to the next of kin, and this fact is neither disputed nor otherwise in issue here. As to the first, he created an immediate expectancy or right of reversion measured by the surplus income in excess of the needs of the *cestuis que trustent*. Up to the time of his death he received this surplus,

and by his will he bequeathed it by force of that provision by which he directed his executors to appraise for purposes of division among his residuary legatees, " all *rights, powers* and *interests* in, over and concerning property of every kind and wheresoever situated which I may own at my death." All this property he ordered inventoried and appraised at its cash value. The purpose of the appraisal was to enable the executors to make a fair division of the residuum into four equal parts. There is no earnest dispute that the intention of the testator was to make this reversion of the income under the aforesaid trust a part of his residuary estate. The guardian *ad litem* insists, however, that this intention was rendered nugatory as matter of law, because in ordering the surplus income appraised at its cash value, she argues that he directed it to be capitalized, thus creating an unlawful accumulation of income. This conclusion seems to me untenable. As already pointed out, when the testator died he left a reversionary right to surplus income, which was to continue until the termination of the trust with the death of his wife. His successors to this right thus obtained an interest analogous to an estate *pur autre vie,* for the duration of the life of his former wife. This right had a capitalized value easily determined on actuarial principles at $432,719.97. The executors were given full discretion to allocate or divide this value in any way they saw fit among the legatees. It was necessary to make the appraisal to carry out the expressed intention of the testator, to value the interest for tax transfer purposes and to enable the executors to make a division of the entire residuary estate into four equal parts. The interest in question could be sold by the executors and the amount realized put into the residuary estate. Such a result would convert a constructive capitalization into an actual one, the income from which would be paid, not into a new corpus, but distributed to those legatees entitled only to a life estate, or at the discretion of the executors, the capital sum realized might be allotted to those legatees entitled to take absolutely. On the other hand, if not sold, the constructive capital value would continue to draw income, which would be none other than the surplus income from the 1919 trust fund. In no event would it be necessary to accumulate the same as received from the plaintiff, trustee, so as to enable its accumulation to catch up with the constructive capitalization of $432,719.97, placed upon the grantor's right under the trust indenture, thereby effecting an unlawful result. Such purpose cannot be spelled out from the will, and if effectuated would result in defeating the very intention of the testator, as the following illustration will clearly show: If, for example, the entire constructive value of the aforementioned

interest, $432,719.97, should be allocated by the executors to the mother of the testator, she would be entitled to a life income on that value, which would be the very surplus income from the 1919 trust. If the guardian's contention should be upheld, that is, that the intention of the testator was to accumulate this income into a new corpus, from which the mother would receive the interest alone, the result would be a share to her equal to less than what one-quarter of the residuary estate would yield. This certainly would be contrary to the expressed intent of the testator. It could not have been his purpose to accumulate the surplus income in a new trust for his mother, to use the hypothetical illustration, but to give her the entire income value of his interest in that trust. Until the residuary estate is distributed by the executors in accordance with the will, the surplus income from the trust estate which would have been payable to the testator, must be turned over to them; and if any of this income so received is used up in administration and other· expenses so that the life beneficiaries of the residuum lose the advantage of part of it, the value of said trust reversion will have to be reappraised. In no event can· an unlawful accumulation of income. arise so as to defeat the plain intent of the testator. I, therefore, decide that the surplus income obtained by the plaintiff, the Guaranty Trust Company, should be paid to the executors to be distributed in accordance with the terms of the will. Submit findings and decree in conformity with this decision.