In the Matter of the Construction of the Will of JULIA M. WATSON, Deceased.

Surrogate's Court, Oneida County, July 6, 1951.

*Arthur N. Gleason* for Robert U. Hayes, as substituted trustee under the will of Julia M. Watson, deceased.

*Brown, Hubbard, Felt & Fuller* for Dorothy E. Millard, as executrix of A. Gordon Millard, deceased.

*Miles W. Jones* for Oneida National Bank and Trust Company of Utica, as executor of Cornelia E. Williams, deceased.

JONES, S. The testatrix, Julia M. Watson, died on January 29, 1927. This proceeding is for the construction of her will, executed April 28, 1917, wherein she provided as follows:

" FIRST: I give and bequeath to my sister Jeanette Millard Gilbert of Clayville, New York an annuity of Five Hundred Dollars ($500.) to be paid to her in two equal semi-annual

installments during the term of her natural life, the same to be charged upon my Estate and a sum set apart by my executors to produce it.

"SECOND: I give and bequeath to my sister-in-law Fannie Gordon Millard the sum of One Hundred Dollars ($100.00) as a token of my affection and regard.

"THIRD: All the rest, residue and remainder of my property real and personal I give, devise and bequeath to my daughter Cornelia E. Williams to have and to hold for and during the term of her life. From and upon her death I give, devise and bequeath the use of my house at Clayville with the furniture and grounds pertaining thereto together with the income of Five Thousand Dollars ($5000.00) to my said sister Jeanette Millard Gilbert, to take, hold and enjoy during her life. The balance of my said estate upon my said daughter's death I give, devise and bequeath to the Oneida County Trust Company of Utica, New York for and during the life of my said sister Jeanette Millard Gilbert in trust, to invest and keep, the same invested in legal interest bearing securities, and to pay over the income thereof at least semi-annually to my nephews and nieces, children of my brothers William and Arthur Millard in equal shares per capita and not per stirpes.

"FOURTH: Upon and after the deaths of my said daughter and sister I give, devise and bequeath the whole residue of my estate including the house, furniture and grounds at Clayville, N. Y. to my said nephews and nieces, children of my brothers William and Arthur Millard in equal shares per capita and not per stirpes to take and hold to themselves, their respective heirs and assigns forever."

At the time of the execution of the will, testatrix' closest relatives were her daughter, Cornelia E. Williams; her sister, Jeanette Millard Gilbert; and her brother, Arthur Millard, the latter being about seventy-two years of age. Her brother, William Millard, had predeceased her, survived by his two children, Sterling Millard and Frederick Millard. At her death there were in being three children of her brother, Arthur, namely, Edith Millard Anibal, Elise Hayes, and A. Gordon Millard, as well as one child of William, viz., Frederick.

Arthur Millard, the brother of testatrix, died in 1923, and Sterling Millard, her nephew, died in 1920. The other four nieces and nephews survived testatrix but died prior to the death of the life beneficiary, Cornelia E. Williams, who died in 1949. Jeanette Millard Gilbert, an annuitant and second life beneficiary, predeceased Cornelia E. Williams, dying in 1933.

This construction is now sought by the executor of the estate of Cornelia E. Williams, urging the court to construe paragraph Fourth as creating a contingent remaining interest in the four nieces and nephews and holding that their contingent interest lapsed upon the failure of any of them to survive the life beneficiary and that such lapsed remainders should now pass by intestacy to the estate of Cornelia E. Williams and be distributed by her will.

We thus have that "perennial enigma" of Surrogate's Court, is it a vested or contingent remainder?

The intention of the testatrix as disclosed by her will read in the light of the circumstances existing when it was executed, so far as consistent with the rules of law, controls the construction of the instrument. Such intent should be ascertained. (*Matter of Pulis*, 220 N. Y. 196, 201, 202.)

The words of gift, "I give, devise and bequeath", are words of present gift, indicating that futurity was not attached to the substance of the gift. (*Matter of Smith*, 205 App. Div. 499.) Such words of present gift have been uniformly held to manifest an intention to vest the remainder upon the death of the testator. (*Connelly* v. *O'Brien*, 166 N. Y. 406; *Matter of Seaman*, 147 N. Y. 69; *Matter of Nedham*, 192 App. Div. 170; *Matter of Foster*, 174 Misc. 933.) The use of the words "upon and after" and similar words or phrases denoting time, when used in a testamentary gift of a remainder, have been held repeatedly to relate to the time of the enjoyment of the gift and not to indicate futurity of the gift itself. (*Riker* v. *Gwynne*, 201 N. Y. 143, modfg. 139 App. Div. 423; *Bergmann* v. *Lord*, 194 N. Y. 70, affg. 122 App. Div. 921; *Connelly* v. *O'Brien, supra*; *Nelson* v. *Russell*, 135 N. Y. 137; *Hersee* v. *Simpson*, 154 N. Y. 496, 500, 501; *Livingston* v. *Greene*, 52 N. Y. 118, affg. 6 Lans. 50; *Matter of Richards*, 150 Misc. 102; *Matter of Bailey*, 124 Misc. 466.)

In the search for the usual landmarks of testamentary intent which may aid in determining whether a remainder is vested or contingent, it is noted that testatrix used no words of survival to limit her gift. This fact, as well as her failure to provide for a gift over, may be some evidence that testatrix intended the remainder to vest at her death. (*Matter of Brown*, 154 N. Y. 313, 322; *Matter of Inslee*, 233 App. Div. 144; *Matter of Clark*, 120 Misc. 191.)

Counsel for the petitioner has argued that the gift of the remainder is a gift to a class and, as such, is a gift to those answering the description and are capable of taking at the time

of distribution, and has cited many cases providing for such determination. The courts have continually pointed out that there is probably no branch of law in which precedent is of less value than in questions involving testamentary construction. (*Matter of Bump,* 234 N. Y. 60, 63.) This is especially true as to questions of vesting of estates.

A gift to a class has been defined as " a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the actual number. " (*Matter of Russell,* 168 N. Y. 169, 174–175; *Matter of Kimberly,* 150 N. Y. 90.) This definition holds only, that the time for ascertaining the parties and the shares is future, i.e. future to the execution of the deed or will. The exact future time for such determination is a matter of testamentary intent. As a will speaks from the date of death, a natural conclusion is that all who answer the description at that time take a gift presently made. This is true in the absence of a different intention disclosed in the will. The class will be ascertained and determined as of the date of death of testatrix. (*Matter of Brown,* 154 N. Y. 313, 326, *supra*; 2 Schouler on Wills [6th ed.], § 1016.) " If the postponement of the payment is for the purpose of letting in an intermediate estate, then the interest shall be deemed vested at the death of the testator and the class of legatees is to be determined as of that date, for futurity is not annexed to the substance of the gift." (*Matter of Crane,* 164 N. Y. 71, 76.) " Absent a clear countervailing expression of intention by the testator, this principle has been uniformly applied. " (*Matter of Leonard,* 143 Misc. 172, 182, and cases cited therein.)

Without specific reference to each of the precedents pointed out by counsel for the petitioner, to the effect that a gift to a class is distributable to those answering the description at the time of distribution, I would like to point out that in each instance so cited there is one of the following conditions present; futurity is annexed to the substance of the gift by divide and pay-over language; the class designated could not possibly be determined until the death of the life beneficiary, as in cases where the gift of the remainder is to children, issue, heirs, etc. of the life beneficiary; or there are further clauses or phrases requiring survival until distribution, or indicating it was the intent to postpone the determination until that time. In *Matter*

*of Orr* (192 Misc. 608, affd. without opinion, 275 App. Div. 702, affd. without opinion, 300 N. Y. 571), the learned Surrogate said (p. 609): " The gift of the remainder was clearly contingent for it was made to a class, whose composition *could not be determined until the death of the life tenant."* (Emphasis added.) The gift there was to the issue of the life tenant. The cases then cited in the *Orr* case concern remainder gifts to " heirs at law " of a life beneficiary (*Gilliam* v. *Guaranty Trust Co.,* 186 N. Y. 127) and " heirs " of a life tenant (*Bisson* v. *West Shore R. R. Co.,* 143 N. Y. 125) and a remainder gift in divide and pay-over directions, with words requiring survival. (*Teed* v. *Morton,* 60 N. Y. 502.)

Julia Watson used no divide and pay-over language. Her gift was a present one to members of a class. It is true that part of that class was already fixed at the death of William and if his children were the *only* nephews and nieces designated, it might well be considered a gift to named individuals, but Arthur was still alive and while he was some seventy-one or seventy-two years of age, there was a chance, however remote, that he might have more children. Before the death of testatrix, Arthur's death sealed the possibility of any increase in the class designated in her will. Unless a contrary intent is found in the language of the will, a gift vests on the death of the testator. I find no such contrary intent expressed in the instrument, either by language or by the general testamentary plan or scheme.

The plan of testatrix is comparatively simple. Her desire was to provide regular income to a sister for life and, next, the use of all of the rest of her property to her daughter. If the sister still lived after the death of the daughter there were added life benefits for the sister until her death. Nowhere in the entire instrument does Julia Watson provide for a single item of personal or real property to be given in fee to her daughter, Cornelia. Her provision for her was solely use and enjoyment. The only outright gift in fee, with the exception of the one she designated a " token " in paragraph Second, was to her nieces and nephews " in equal shares per capita and not per stirpes to take and to hold to themselves, their respective heirs and assigns forever. "

In the face of this apparent testamentary plan, a construction that would result in partial intestacy, thus throwing the testatrix' entire residue into the estate of her daughter to be distributed under her testamentary direction, would result in a defeat

of the intent of the testatrix. I hold that the residue of this estate vested on the death of testatrix in her nephews and nieces, children of her brothers, William and Arthur Millard, who were in being at that time, and since none has survived to the time of enjoyment, their shares are payable to their estates.

I feel that this construction is in complete harmony with the preference of law for early vesting. (*Riker* v. *Gwynne,* 201 N. Y. 143, 149, *supra.*) " The law has long favored a construction of language in deed and will that accomplishes the vesting of estates ". (*Matter of Krooss,* 302 N. Y. 424, 427; *Hersee* v. *Simpson,* 154 N. Y. 496, 502, *supra; Connelly* v. *O'Brien,* 166 N. Y. 406, *supra; Matter of Watson,* 262 N. Y. 284.) It is likewise consonant with the rule that prefers a construction that avoids a partial intestacy. (*Haug* v. *Schumacher,* 166 N. Y. 506; *Fulton Trust Co.* v. *Phillips,* 218 N. Y. 573.)

Decreed accordingly.