S. Samuel Di Falco, S.
This is a proceeding for the settlement of the account of the trustees of a trust which the testatrix created for the benefit of her sister for life with remainder over to designated individuals in specified amounts. The trust which has now fallen in with the death of the life beneficiary was established in accordance with the directions of the testatrix with a funded principal of $50,000. It was that precise sum which the testatrix disposed of in directing that the remainder be paid in varying dollar amounts to 14 legatees. In the interval between the death of the testatrix and the termination of the trust, however, the fund had more than doubled in value and dispute has arisen as to the disposition of the amount now on *403 hand in excess of the fixed original principal, some of those named as remaindermen contending that all of the pecuniary ■bequests should be increased proportionately as against the position assumed by the residuary legatees who argue that the surplus was not disposed of by the testatrix and that it falls as a result into the residue (Riker v. Cornwell, 113 N. Y. 115).
The courts in situations such as the present one have almost uniformly reached the conclusion that the testator foresaw the possibility of fluctuations in the capital value of the principal of the trust during the time consumed in its administration. From that assumption there necessarily follows an implied direction for the disposition and treatment of any surplus becoming available or any deficit which might result with the cases holding that the benefits in the first case and the detriment in the other are confined to the designated beneficiaries instead of being charged to or against the residuary state. In some cases the courts in reaching this result have borrowed from the doctrine that no testator consciously intends to die leaving property partially unbequeathed, an assumption normally employed in the construction of clauses disposing of residuary estates, but broad enough in scope to permit its use in connection with preresiduary gifts unless a specific intention to the contrary and a direction to add any possible surplus to the residue is expressed in the testamentary instructions.
The leading ease is Matter of Low (232 App. Div. 414 [2d Dept.], affd. 257 N. Y. 613). There the testator created a trust with a principal sum of $400,000 for the benefit of his wife for life directing that upon her death five legacies of $80,000 each were to be paid to specified individuals. At the termination of the trust the principal sum amounted to $554,000. In holding that the designated legatees were entitled to share proportionately in the surplus as against the contention that it fell into the residuary estate the court said (p. 420): “ the testator was dealing with an invested fund, and did not intend to leave any portion of it unbequeathed by the 17th clause, but did intend that these legacies should exhaust the fund.” The court dismissed the argument that a bequest of this sort is in the nature of a demonstrative legacy which it described as a “ legacy general in form, but pointing out a particular fund from which it shall be paid [and which] possesses some of the attributes of a specific legacy, and also of a general legacy. Unlike a specific legacy, however, if, at the time of the testator’s death, the fund from which it is directed to be paid is insufficient or no longer exists, it does not abate but must be paid in full from the general assets of the estate ” (p. 419). The court described the case *404 as the first in which that doctrine was invoked, “ not to make up from the general assets of the estate the full amount of these legacies because of the failure or decrease of the fund, but to prevent the legatees from receiving the increase in that fund.” (p. 419).
To like effect see Prentice-Hall “ Wills, Estates and Trusts ” (vol. 1, § 380, p. 364); Matter of Ottenberg (67 N. Y. S. 2d 589); Matter of Brundage (163 Misc. 1); Matter of Farrell (175 Misc. 430); Matter of Guggenheim (N. Y. L. J., May 4, 1946, p. 1760, col. 7); Matter of Knickerbocker (165 Misc. 190, affd. 255 App. Div. 309, affd. 280 N. Y. 560; Matter of Rothschild (11 Misc 2d 817) and Matter of Kilborn (15 Misc 2d 938).
In the present case the court sees no reason for departure from the standard rule of construction. A wholly different situation obtained in Matter of Wollman (11 Misc 2d 345), where the bequest of the specified dollar part of the remainder was instinct with an intention on the part of the testator to limit the legacy to that amount and nothing more. Here on the contrary that element is lacking. That the testatrix foresaw the possibilities of a fluctuation in the capital value of the trust principal is by no means an extravagant assumption. That she intended to have the effect of any appreciation or depreciation confined to the interests she designated to participate in the remainder logically follows from the fact that she left no other instructions concerning the matter. There is nothing in the will which would indicate that she regarded the trust other than as an “ invested fund ” as that term is used in Low (supra). The court accordingly holds that the appreciation in the principal is to be shared by the named remaindermen in the proportion which their respective shares bear to the original fund.
Of the 14 legacies mentioned, that for Stella May Theobold lapsed by reason of her death without issue prior to the death of the now deceased life tenant. That legacy, as augmented by the addition to its principal, becomes a part of the residuary estate to be disposed of in accordance with the directions prescribed by the testatrix (Riker v. Cornwell, 113 N. Y. 115).
One of the dollar shares in the remainder was left by the testatrix to Nellie D onion Reilly or her issue in the event she failed to survive the life tenant whom in fact she predeceased. Mrs. Reilly was survived by five children, all of whom are presently living with the exception of Mary C. Reilly, who also predeceased the life beneficiary. The court is asked to determine whether the estate of Mary 0. Reilly shares in the bequest of the remainder to the issue of Nellie Donlon Reilly under the circumstances existing at the time of the termination of the trust. *405 The gift to Mrs. Nellie Reilly was specifically conditioned upon her survival of the life tenant, a stipulation significantly omitted in the case of the alternative bequest to her issue, a class which therefore must be defined as composed of those individuals who qualified for membership as of the date of her death and not as of the death of the life tenant (Riker v. Gwynne, 201 N. Y. 143). The estate of Mary C. Reilly is accordingly held to be entitled to share in the gift set apart for the issue of Nellie D onion Reilly.
A further question is presented by the petitioner in connection with the allocation of the expenses chargeable to the administration of the trusts including commissions and attorneys’ fees. The testatrix had provided in paragraph sixth of her will that all taxes on legacies to her sister Nettie B. Frank and all “ trustees’ fees ” thereon were to “be paid by my estate and not by my said sister.” The legacy to Nettie Frank under the paragraph of the will here for construction was a life interest entitling her to the income from the trust of $50,000. Commissions now payable from the principal of that trust will, of course, not reduce the interest of the life beneficiary, now deceased. The court accordingly holds that the principal expenses now payable are to be charged to the fund being accounted for.
One of the legacies which the testatrix directed to be paid from the remainder of the paragraph fourth trust was in the amount of $2,000 to be paid to the corporate trustee in separate trust for the perpetual care of a cemetery lot in Woodlawn Cemetery. The cemetery authorities maintain a pooled trust fund in which are invested funds for the perpetual care of the cemetery lots. The petitioner proposes to pay the legacy in question to the cemetery authorities for administration in accordance with that program. None of the parties to this proceeding has indicated any opposition to this proposal and the plan is accordingly approved.