[2 NYS3d 862]

In the Matter of BNY MELLON, N.A., as Successor Trustee of a Trust Created under the Last Will and Testament of WILLIAM R. RICE, Deceased.

Surrogate's Court, Westchester County, December 29, 2014

### APPEARANCES OF COUNSEL

*Bleakley Platt & Schmidt, LLP*, White Plains, for petitioner.

*McMillan, Constabile, Maker & Perone, LLP*, Larchmont, for Mark Steven Silo, executor.

*Sall & Geist*, White Plains (*Gerald K. Geist* of counsel), guardian ad litem.

### OPINION OF THE COURT

ANTHONY A. SCARPINO, JR., S.

In this contested miscellaneous proceeding, the petitioner BNY Mellon National Association (BNY), the trustee under a trust created under the last will and testament of William R. Rice (the decedent), requests that the court issue a decree construing a portion of that last will and testament in order that it can make final distribution to the individuals entitled to the assets under the trust. BNY has taken a position on the proposed construction, and that construction is opposed by Mark Steven Silo, as the executor of the estate of Agnes Rice Silo (Agnes's estate).

A guardian ad litem was appointed to represent the interests of certain known individuals, some of whom have unknown whereabouts. These individuals constitute the estates of nieces and nephews of the decedent, only some of which have representatives. The guardian ad litem has filed a report in which he supports the construction proposed by BNY.

The decedent was married to Marie Rice, and they had one child, a daughter named Ruth Rice. On October 7, 1953, the decedent, an attorney, drafted an instrument and executed it. On December 17, 1953, the decedent died. On December 31, 1953, the instrument was admitted to probate, and letters

testamentary and letters of trusteeship issued to the First Westchester National Bank of New Rochelle, BNY's predecessor in interest (also referred to here as BNY).

The instrument provided that if the decedent survived Marie and Ruth, his residuary estate would pass to Ruth's issue, and if Ruth had no issue, then his estate was to be divided *"per capita* among my nephews and nieces of my own blood. The share of any deceased nephew or niece is to be divided between his or her own issue *per stirpes."*

On page 2 of the will, the decedent instructed that, if Marie survived him, one half of his adjusted gross estate (after payment of administration expenses and pre-residuary bequests) was to fund a marital trust for her lifetime with her having a testamentary power of appointment. The marital trust further provided for the net income to be paid to Marie in quarterly installments, and upon her death, if the power of appointment was not exercised, the principal would continue in trust with the income payable to Ruth for life. At Ruth's death, the principal was to be paid to Ruth's issue per stirpes, or if Ruth had no living issue, "then the remaining principal shall be divided in equal parts between my nephews and nieces of my own blood, *per capita."*

At pages 2 to 3, the will provided for the remainder of the residuary estate to pass to the trustee to be held in trust with three fourths of the income to be paid to Marie for her lifetime and the remaining one fourth of the income to be paid to Ruth for her lifetime. The will further stated that, upon the death of either, the entire net income of the trust was to be paid to the survivor for life. Upon the termination of the trust, the principal was to be paid to the *"descendants of my daughter, RUTH,* per stirpes *and not* per capita. *In the event my daughter, RUTH, die[s] without descendants, then the principal shall be distributed among my nephews and nieces of my own blood,* per capita." (Emphasis added.)

On February 15, 1980, Marie died, and in her will, she exercised the power of appointment in favor of Ruth. On January 9, 2009, Ruth died, without issue. On her death, the residuary trust established at pages 2 to 3 of the decedent's will, terminated.

As noted, BNY filed this petition, seeking a decree construing the highlighted provision of the decedent's last will and testament set forth above. BNY maintains that, while the decedent's intention is not perfectly clear, it would appear that

he aimed to benefit those nieces and nephews of his own blood who were alive at his death. This construction would yield the distribution by BNY of the corpus equally among the 16 estates of the decedent's blood nieces and nephews who were alive at his death.

In contrast, Agnes's estate believes that the language of the decedent's will demonstrates that he intended that the final takers of the trust survive the lives of Marie and Ruth, and that therefore, since Agnes was the only individual of the decedent's blood nieces or nephews to post-decease Marie and Ruth, her estate takes the entire remainder. Courts have repeatedly pointed out that there is "probably no branch of law in which precedent is of less value than in questions involving testamentary construction . . . This is especially true as to questions of vesting of estates" (*Matter of Watson*, 201 Misc 193, 196 [Sur Ct, Oneida County 1951], *affd* 279 App Div 840 [1952], *lv denied* 279 App Div 976 [4th Dept 1952], citing *Matter of Bump*, 234 NY 60 [1922]).

In *Matter of Bump*, the Court of Appeals wrote:

> "In the construction of a will we seek the intent of the testator as exhibited by the words he has selected. Canons of construction may aid us. Based as they are upon general considerations; upon guesses as to what the average man would intend by this expression or by that, we rest upon them in the absence of more certain indications. Slight variations of phrase, however, or differences in arrangement may lead us to opposite results" (234 NY 60, 63).

Applying the rule of law, we know that a testator's intent is gleaned not by focusing on any one word or provision but from a sympathetic reading of the entire instrument (*see Matter of Cord*, 58 NY2d 539, *rearg denied* 60 NY2d 586 [1983]; *Matter of Fabbri*, 2 NY2d 236, *rearg denied* 2 NY2d 979 [1957]), giving each word its ordinary meaning (*see Matter of Gustafson*, 74 NY2d 448 [1989]). If a will reveals a dominant purpose or plan, the individual parts must be interpreted in accordance with that plan, and the actual purpose of the testator be given effect as far as possible (*see Matter of Hobert*, 7 Misc 3d 447 [Sur Ct, Westchester County 2004]). The surmise of the drafter or any other interested person is not relevant (*see Matter of Cord*).

To begin, the court reviews the will to ascertain whether an ambiguity exists (*see Matter of Ragone*, 58 NY2d 864 [1983]). If

the court finds such an ambiguity, it may resort to evidence outside of the language of the instrument (*see Matter of Ragone*). Here, the court has reviewed the language of the will and holds that it is unambiguous.

As set forth above, certain presumptions developed by case law facilitate the determination of a testator's intent. Since the decedent made a will, there is always a presumption against intestacy (*see Matter of Fabbri*; *Matter of Eisner*, 34 Misc 2d 662 [Sur Ct, Westchester County 1962]), and the law favors a vesting of estates (*see Matter of Russell*, 168 NY 169 [1901]; *United States Trust Co. v Taylor*, 193 App Div 153 [1st Dept 1920], *affd* 232 NY 609 [1922]). Here, the decedent's intention is apparent. Through his last will and testament, he desired to benefit Marie, Ruth and Ruth's progeny. He gave general bequests to his sisters and brothers living at his death.[1] However, it was only on the chance that Ruth died without leaving issue that any of his nieces and nephews would share in his bounty.

The immediate construction issue concerns vesting, or in other words, whether the substitutionary bequest to the decedent's "nieces and nephews of his own blood, *per capita*," vested as of the decedent's death indefeasibly or vested subject to divestment if a niece or nephew failed to survive Ruth. In making a determination as to survival requirements, again, the court looks first to the relevant clause (*see Matter of Gulbenkian*, 9 NY2d 363 [1961]; *Matter of Larkin*, 9 NY2d 88 [1961]). There are no actual words of survival in the clause at issue.[2]

Nowhere in the instrument did the decedent identify his nieces and nephews by name. The court finds, and all parties who have appeared, agree, that, by the provision to his nieces and nephews, the decedent was making a gift to a class and not a gift nominatum (11-193 Warren's Heaton, Surrogate's Court Practice § 193.01 [1] [2015]). This is pertinent because a class gift generally is to a group "uncertain in number at the time of the gift, to be ascertained at a future time, who are all

---

1. There were no substitutional bequests for these general legacies. Two thousand five hundred dollars went to each brother and sister who was alive at his death. This further demonstrates that the nieces and nephews were not of primary importance because if any of the decedent's brothers or sisters predeceased, their bequest would lapse into the residuary.

2. Nor are there words of survival in the other two clauses containing substitutionary bequests to the decedent's nieces and nephews.

to take in equal or some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons" (11-193 Warren's Heaton, Surrogate's Court Practice §§ 193.01 [1]; 193.02 [2] [a] [2015]; *see also Matter of King*, 200 NY 189 [1910] [gift nominatum to post-deceased nieces and nephews lapses to residuary whereas gift to class determined as to individual takers at time of distribution]).

As to the time of vesting, EPTL 6-3.2 (a) (2) sets forth the kinds of future estates made by the creator in favor of others. They are estates which are (A) indefeasibly vested, (B) vested subject to open, (C) vested subject to complete defeasance and (D) subject to a condition precedent. The statute defines a future estate indefeasibly vested as one created in favor of ascertained persons in being which is certain to come into possession and cannot be defeated or abridged (*see* EPTL 6-4.7). On the other hand, a future estate vested subject to complete defeasance is made in favor of ascertained persons in being which would become an estate in possession upon the expiration of the preceding estate but may end or be terminated by the creator at, before or after the preceding estate (*see* EPTL 6-4.9).

In the paragraph at issue, the decedent wrote that his nieces and nephews were to take *per capita.* Considering the instrument as a whole, by so stating, it appears clear that the decedent was implying survivorship of the last life tenant. Had the decedent intended that his nieces or nephews need not survive the life estates, he would have provided for a distribution per stirpes[3] (*see Matter of Gulbenkian*).

This notion is further buttressed by the fact that the decedent did not use language such as " 'to the children of my brother . . . and . . . sister . . . To Have and To Hold the same to them, their heirs, Executors, Administrators and Assigns forever share and share alike *per capita* and not *per stirpes*' " (*Matter of Bogart*, 62 Misc 2d 114, 116 [Sur Ct, Kings County 1970] [emphasis added] [class gift to nieces and nephews vested at death of decedent]) or "*per capita* and not

---

3. In one paragraph of his last will and testament, the decedent employed a per stirpes distribution among his nieces and nephews. This instance is harmonious with the decedent's overall intention because it applied to the circumstance of his post-decease of Marie and Ruth, Ruth having had no issue. At that point, the decedent would have known all who predeceased him, could identify the children of nieces and nephews and likely would have had a relationship with those individuals.

*per stirpes* to take and to hold themselves, their respective heirs and assigns forever" (*Matter of Watson* at 197 [same]).

Additionally, while not the exact phraseology, the language used by the decedent in that the principal of the trust shall be distributed to the nieces and nephews on the occurrence of Ruth dying without issue, is analogous to "divide and pay over" language. The divide and pay over rule[4] is one of construction and is used where the gift is not immediate but is to be divided and paid at a future time, where the gift is to a class of persons (11-193 Warren's Heaton, Surrogate's Court Practice § 193.02 [3] [2015]) and where the gift is of money (*see Matter of Crane*, 164 NY 71 [1900]). Generally, the result of the rule is that the gift is paid to those answering the description at the time of distribution (*see Matter of Leonard*, 218 NY 513 [1916]; *see also Matter of Crane*).

Based on the above, the court finds that the interest to the decedent's nieces and nephews of his own blood, *per capita*, vested at the death of the testator, subject to complete defeasance and being that Agnes Silo was the only niece of the class to post-decease the life tenant, her estate takes all, subject to the terms of the trust.

The determination of the reasonableness of professional fees awarded in an estate matter is within the sound discretion of the Surrogate's Court (*see* SCPA 2110; *Matter of Graham*, 238 AD2d 682 [3d Dept 1997]). This discretion rests with the court regardless of the terms of a retainer agreement or any agreement between the interested parties consenting to the amount of compensation requested (*see Matter of Gluck*, 279 AD2d 575 [2d Dept 2001] [and the cases cited therein]).

In determining the reasonableness of the fees, the court considers certain factors which include the size of the estate; the difficulty of the questions involved; the skill required to handle the problems presented; the attorney's experience, ability and reputation; the responsibilities involved and the benefit resulting to the estate from the services rendered (*see Matter of Freeman*, 34 NY2d 1 [1974]; *Matter of Potts*, 213 App Div 59 [4th Dept 1925], *affd* 241 NY 593 [1925]).

In fixing the reasonable compensation of the guardian ad litem in the sum of $5,740, the court has considered each of the

---

4. Although not a favored rule of construction, divide and pay over has not been abandoned (11-193 Warren's Heaton, Surrogate's Court Practice § 193.02 [3] [2015]).

factors set forth in *Matter of Freeman*, for the fixation of a legal fee on a quantum meruit basis and credits the guardian ad litem with 16.4 hours of work at $350 per hour.